[Civ. No. 56360. Second Dist., Div. One. Apr. 2, 1981.]

SAFECO INSURANCE COMPANY OF AMERICA,
Plaintiff and Appellant, v.
CHARLES D. THOLEN et al., Defendants and Respondents.

**COUNSEL**

Ives, Kirwan & Dibble, Martin J. Kirwan, Melvin F. Seifert, Lascher & Wilner and Edward L. Lascher for Plaintiff and Appellant.

Anderson, Ablon & Maseda, Charles R. Anderson, Stephen B. Maseda and Rebecca L. Holt for Defendants and Respondents.

## OPINION

**JEFFERSON (Bernard), J.***—By a first amended complaint, plaintiff Safeco Insurance Company of America (insurer, and hereinafter referred to as Safeco), sought damages against defendants Charles D. Tholen, his wife Betty Lee Tholen, and Kerry Tholen, the daughter of Charles (insureds) for breach of a contract of insurance for not protecting Safeco's subrogation rights after the insureds had obtained a judgment in a United States District Court in Alabama. That judgment awarded damages to the three Tholens by reason of an automobile accident in Alabama. This accident involved a collision of three automobiles—an automobile occupied by the Tholens, an automobile operated by Harvis Carney, an uninsured motorist, and an automobile operated by Cathrene E. Greenhaw, a motorist insured by State Farm Mutual Insurance Company.

Safeco also sought damages against defendants Randall H. Kennon and Tyre & Kamins, who were attorneys for the Tholens in the Alabama action, on the theory that these defendants interfered with the contractual rights of Safeco against the Tholens.

A general demurrer of defendant attorneys was sustained by the trial court to Safeco's first amended complaint without leave to amend.[1] On September 28, 1978, an order of dismissal of the action was entered as to the demurring defendant attorneys and notice of entry thereof was mailed by the clerk of the court to plaintiff. A general demurrer of the Tholen defendants to the first amended complaint was also sustained without leave to amend. On November 7, 1978, an order of dismissal was entered as to the Tholen defendants and notice of entry thereof was mailed by the clerk to plaintiff.

On December 1, 1978, plaintiff filed its notice of appeal from each of the dismissal orders.

---

*Retired Presiding Justice of the Court of Appeal sitting under assignment by the Chairperson of the Judicial Council.

[1]The first and second causes of action of the first amended complaint were against State Farm Mutual Insurance Company, which is not a party to this appeal. The third cause of action was against State Farm and defendant attorneys, and the fourth was against the Tholens.

On April 15, 1980, pursuant to a written motion, we ordered dismissal of Safeco's appeal from the order of dismissal as to defendants Randall H. Kennon and Tyre & Kamins.[2]

## I

### *A Summary of the Facts Alleged and Those Judicially Noticed*

As previously stated herein (see fn. 1, *ante*), the first and second causes of action of Safeco's first amended complaint were directed against defendant State Farm Mutual Insurance Company, which is not a party to this appeal. The third cause of action was directed against State Farm and defendants Kennan and Tyre & Kamins. By reason of our dismissal of Safeco's appeal from the trial court's order of dismissal as to defendants Kennan and Tyre & Kamins, the question of whether Safeco's first amended complaint stated good causes of action against these defendants is not before us. We are concerned only with the question of whether Safeco's first amended complaint set forth a good cause of action in the fourth cause of action of this complaint against the Tholens.

The allegations of the first, second and third causes of action, therefore, are irrelevant to the merits of this appeal, except insofar as the allegations therein are incorporated in the fourth cause of action against the Tholen defendants.

We take note of the fact that, in ruling on the demurrers of the defendants, the trial court took judicial notice of the court files in the actions brought by the three Tholens in the United States District Court for the Northern District of Alabama and in the appeal from the judgment rendered therein in the United States Court of Appeals for the Fifth Circuit. The case on appeal was *Tholen* v. *Carney* (5th Cir. 1977) 555 F.2d 479.)[3] In that context the facts alleged by Safeco and

---

[2]Safeco's notice of appeal was filed December 1, 1978, more than 60 days after the date (Sept. 28, 1978) when the clerk of the superior court mailed notice of entry of the written order, signed by the judge, dismissing the action as to said defendants. Said order was an appealable final judgment (Code Civ. Proc., § 581d; 6 Witkin, Cal. Procedure (2d ed. 1971) Appeal, § 58, p. 4073), and the notice of appeal therefrom was not filed within 60 days after the date (Sept. 28, 1978) of mailing of the notice of entry thereof by the clerk, as required by California Rules of Court, rule 2(a).

[3]The first amended complaint herein incorporated by reference the memorandum of opinion filed by the district court and the opinion filed by the court of appeals.

those judicially noticed by the trial court with respect to the issue of whether Safeco has pleaded a good cause of action for relief against the Tholen defendants are summarized below.

Prior to March 6, 1974, plaintiff Safeco issued a policy of automobile liability insurance to defendant Charles D. Tholen. This policy included uninsured motorist coverage. Betty Lee Tholen and Kerry Tholen were additional insureds under the policy as the wife and daughter of Charles, respectively. The policy was in effect on October 26, 1974, the date of the three-vehicle collision in Alabama.

Prior to October 26, 1974, State Farm had issued a policy of automobile liability insurance to George E. Dykes. Cathrene E. Greenhaw was an additional insured under this policy. This policy was in full force and effect on October 26, 1974.

On October 26, 1974, Harvis L. Carney had no liability insurance covering him or the vehicle he was operating on that date.

On October 26, 1974, Greenhaw was operating Dykes' automobile southbound on United States Highway 11 in Alabama, and Carney was operating his vehicle southbound behind the Greenhaw-operated automobile, and Charles Tholen was operating his automobile, in which Betty and Kerry Tholen were passengers, northbound on said highway. A collision occurred among the three vehicles. As a proximate result of this three-vehicle collision, Charles, Betty, and Kerry Tholen all suffered certain personal injuries.

On October 14, 1975, slightly less than a year after the collision, each of the three Tholens brought a separate action in the United States District Court in Alabama against Greenhaw and Carney. The actions were consolidated for jury trial. On May 11, 1976, Safeco's motion to intervene in the actions as a defendant and cross-complainant was granted. The cross-complaint requested that in the event judgment was entered in favor of the Tholens against Carney, the uninsured motorist, that Safeco be granted a judgment of indemnification against Carney for the amounts Safeco might be required to pay to the Tholens by reason of the uninsured motorist coverage contained in Safeco's policy issued to Charles Tholen.

Following a jury trial with special verdicts, the district court entered a joint and several judgment against Safeco, Greenhaw, and Carney in

favor of Betty Tholen for $15,000, in favor of Kerry Tholen for $15,000, and in favor of Charles Tholen for $10,000; and, in addition, Betty Tholen recovered judgment against Greenhaw and Carney for $5,000, and Kerry Tholen recovered judgment against Greenhaw and Carney for $15,000, and Charles Tholen recovered judgment against Greenhaw and Carney for $280.44.

The judgment also provided that Safeco recover from Greenhaw and Carney the sum of $3,219.56, and from Carney such amounts as it should pay the three Tholens by reason of their recovery against Safeco, with a maximum liability of $30,000.

The federal district court filed a memorandum of opinion in connection with its judgment which referred to complications in the case arising from the fact that Safeco intervened therein—not merely to seek reimbursement for its payment of property damages to Charles Tholen, but also to obtain a determination of its liability to the three Tholens under the uninsured motorist provisions of its policy. The district court stated: "The central question may thus be put: to what extent is Safeco's liability to its insureds under the uninsured motor vehicle section of the policy affected by the fact that the insureds' injuries were found to have been caused by negligence of both an uninsured motorist and an insured motorist? [¶] Analysis starts with certain basic principles, well recognized in this jurisdiction: Where there are several joint tortfeasors responsible for the plaintiff's damages, the plaintiff is entitled to judgment in the full amount against each, as if the others did not exist. That is, there is no apportionment of damages among joint tortfeasors. The plaintiff can seek recovery of these judgments against all or any of the judgment debtors; however, to prevent 'double recovery,' amounts recovered from one reduce the amounts recoverable from the others. The tortfeasors do not by reason of unequal payments to the plaintiff obtain a right of contribution from the other tortfeasors. [¶] It follows that the Tholens, armed with judgments against both Carney and Greenhaw, are entitled to collect, if they can, the entire amount of the judgments from Carney alone; and this is so even though Greenhaw is insured. Yet, under its policy, Safeco has agreed 'to pay all sums which the insured . . . shall be legally entitled to recover as damages from the . . . operator of an uninsured motor vehicle'; i.e., to pay the Tholens all sums which they are legally entitled to recover from Carney. [¶] Safeco would argue that other language in the policy limits its liability to situations where there are no other jointly liable persons from whom the plaintiffs could recover their judgments. The provision so relied upon,

however, reads as follows: [¶] 'Any loss payable under the terms of this coverage shall be reduced by: . . . (3) all sums paid by or on behalf of the owner or operator of the uninsured motor vehicle and any other person or organization jointly or severally liable together with such owner or operator for bodily injury to an insured.' [¶] This clause does no more than prevent double recoveries. It does not make Safeco's liability secondary to other sources for recovery. As to the Tholens—putting aside, as beyond the confines of the litigation, any claims for indemnity or by subrogation which Safeco may have against State Farm—Safeco is liable for the sums which the Tholens may otherwise recover from Carney. [Citations omitted.]" (Fns. omitted.)

Safeco appealed from the judgment of the federal district court to the United States Court of Appeals, Fifth Circuit, which affirmed the judgment of the district court on the basis of its memorandum opinion. (See *Tholen v. Carney, supra,* 555 F.2d 479.) Thereafter, the Tholens collected $30,000 of their judgment from Greenhaw through her insurer, State Farm. Safeco paid to the Tholens $32,345.41, the balance of the judgment.

II

*The Insurance Policy Provisions Claimed by
Safeco to Have Been Breached by
the Tholens, the Insureds*

The insurance policy issued by Safeco to the Tholens provided in part as follows: "TRUST AGREEMENT: In the event of payment to any person under this section: [¶] (a) SAFECO shall be entitled to the extent of such payment to the proceeds of any settlement or judgment that may result from the exercise of any rights of recovery of such person against any person or organization legally responsible for the bodily injury because of which such payment is made; [¶] (b) such person shall hold in trust for the benefit of SAFECO all rights of recovery which he shall have against such other person or organization because of the damages which are the subject of claim made under this section; [¶] (c) such person shall do whatever is proper to secure and shall do nothing after loss to prejudice such rights; . . . [¶] (e) such person shall execute and deliver to SAFECO such instruments and papers as may be appropriate to secure the rights and obligations of such person and SAFECO established by this provision."

Safeco claims that the Tholens breached these "Trust Agreement" provisions of the policy in not collecting the full amount of their judgment—$60,000—from the *insured* defendant in the Alabama action, Greenhaw (insured by State Farm); that in refusing to do so, although requested by Safeco even before Safeco's appeal from the Alabama judgment, Safeco was required to appeal from the Alabama judgment and incur costs and attorney fees in excess of $5,000.

It is Safeco's position that the Tholens wrongfully filed a satisfaction of judgment in the federal district court after accepting $32,345.41 of the judgment from Safeco and thereby caused Safeco to lose all rights of subrogation against Greenhaw to which Safeco was entitled under the "Trust Agreement" policy provisions and which the Tholens were obligated to protect. According to Safeco, the acts of the Tholens, its insureds, in collecting only $30,000 of the Alabama judgment from Greenhaw and filing a satisfaction of judgment in the Alabama federal district court constituted a breach of such insureds' obligations under the contract of insurance between the insureds and Safeco, the insurer, a breach which caused Safeco to lose its right to recover from the insured motorist, Greenhaw, the sum of $32,345.41 expended by Safeco under the uninsured motorist coverage of the insurance contract with the Tholens.

### III

*Does the Doctrine of Res Judicata Preclude
Plaintiff Safeco From Alleging a Good Cause
of Action Against Its Insureds, the Tholens?*

The Tholen defendants assert that the principles of res judicata bar Safeco's action against them in light of the Alabama judicial proceedings and judgment. It is Safeco's thesis that the Alabama judgment presents no bar to Safeco's cause of action against its insureds and, consequently, the trial judge erred in sustaining the Tholens' demurrer to Safeco's first amended complaint.

▆ We begin our discussion of this issue between the parties with the recognition of the legal principle that the doctrine of res judicata precludes parties or their privies from relitigating a cause of action that has been finally determined by a court of competent jurisdiction. (*Busick* v. *Workmen's Comp. Appeals Bd.* (1972) 7 Cal.3d 967, 972 [104 Cal.Rptr. 42, 500 P.2d 1386].) The doctrine is founded upon the rationale that the party affected, or some other party with whom he is

in privy, has actually litigated, or has had the opportunity to litigate, the same matter in a former action in a court of competent jurisdiction, and should not be permitted to litigate the same matter again. To permit relitigation would sanction harassment and vexation of the opponent. (*Wood* v. *Herson* (1974) 39 Cal.App.3d 737, 745 [114 Cal.Rptr. 365].)

■ Generally speaking, under the res judicata doctrine, a valid final judgment, if in favor of the plaintiff, merges the cause of action in the judgment; and, if in favor of the defendant, constitutes a bar to any further suit on the same cause of action. (*Busick, supra,* 7 Cal.3d 967, 973.) Under the full faith and credit clause of the United States Constitution, a final judgment of a sister state may constitute such a bar to further litigation (*Hicks* v. *Corbett* (1955) 130 Cal.App.2d 87, 90-91 [278 P.2d 77]; see also *Thorley* v. *Superior Court* (1978) 78 Cal.App. 3d 900, 905-907 [144 Cal.Rptr. 557].)

■ It is well settled that, in deciding whether to sustain a demurrer to a complaint because of the defense of res judicata, a court of this state may take judicial notice of official acts or records of any state in the United States (Evid. Code, § 452; *Carroll* v. *Puritan Leasing Co.* (1978) 77 Cal.App.3d 481, 486 [143 Cal.Rptr. 772]).[4]

■ It is important to keep in mind that the doctrine of res judicata has a double aspect. *First.* It precludes parties or their privies from relitigating a cause of action that has been finally determined by a court of competent jurisdiction. *Second.* Under the doctrine, any issue that has been necessarily decided in such litigation is deemed to have been conclusively determined as to the parties or their privies even though such issue is involved in a subsequent lawsuit on a *different* cause of action. (*Beverly Hills Nat. Bank* v. *Glynn* (1971) 16 Cal.App.3d 274, 283 [93 Cal.Rptr. 907]; *Estate of Cates* (1971) 16 Cal.App.3d 1, 20 [93 Cal. Rptr. 696].)

Under this double aspect of the res judicata principle, in a new action on the *same cause of action* (first aspect), a prior judgment is a complete bar or merger, whereas in a new action on a *different cause of action* (second aspect), the former judgment is effective as a collateral estoppel on all issues litigated therein. (4 Witkin, Cal. Procedure (2d

---

[4]Evidence Code section 452 provides, in relevant part, that "[j]udicial notice may be taken of the following matters . . .: [¶] (d) Records of (1) any court of this state or (2) any court of record of the United States or of any state. of the United States."

ed. 1971) Judgment, § 148, p. 3293; see *Price* v. *Sixth District Agricultural Assn.* (1927) 201 Cal. 502, 510 [258 P. 387].)

■ The collateral estoppel aspect of res judicata will apply as to all issues which were involved in the prior case even though some *factual* matters or *legal* arguments which could have been presented in the prior case in support of such issues were not presented. (*Kingsbury* v. *Tevco, Inc.* (1978) 79 Cal.App.3d 314, 318 [144 Cal.Rptr. 773].) Thus, where two lawsuits are brought and they arise out of the same alleged factual situation, and although the causes of action or forms of relief may be different, the prior determination of an issue in the first lawsuit becomes conclusive in the subsequent lawsuit between the same parties with respect to that issue and also with respect to every matter which might have been urged to sustain or defeat its determination. (*Pacific Mut. Life Ins. Co.* v. *McConnell* (1955) 44 Cal.2d 715, 724-725 [285 P.2d 636].) If the legal principle were otherwise, litigation would end finally only when a party could no longer find counsel whose knowledge and imagination could conceive of different theories of relief based upon the same factual background. (*Kronkright* v. *Gardner* (1973) 31 Cal.App.3d 214 [107 Cal.Rptr. 270].)

Consequently, "'[i]f the matter was within the scope of the [prior] action, related to the subject-matter and relevant to the issues, so that it *could* have been raised, the [prior] judgment is conclusive on it despite the fact that it was not in fact expressly pleaded or otherwise urged. The reason for this is manifest. A party cannot by negligence or design withhold issues and litigate them in consecutive actions. Hence the rule is that the prior judgment is res judicata on matters which were raised or could have been raised, on matters litigated or litigable.'" (*Kronkright, supra*, 31 Cal.App.3d 214, 217; see also *City of Glendale* v. *Roseglen Constr., Inc.* (1970) 10 Cal.App.3d 777, 781 [89 Cal.Rptr. 219].) Thus, an issue may not be split into pieces. If it has been determined in a former action, it is deemed finalized notwithstanding that a party litigant may have omitted to urge for or against it matters which, if so urged, would have produced an opposite result. (*Price, supra*, 201 Cal. 502, 511; *Kronkright, supra*, 31 Cal.App.3d 214, 217; *Roseglen Constr., Inc., supra*, 10 Cal.App.3d 777, 781.)[5]

---

[5]"It has become axiomatic that a single cause of action cannot be split and made the basis for several suits. The rule against splitting a cause of action is both a rule of abatement of actions—a defendant in a second suit may plead the pendency of the first in abatement—and a rule involving the application of the doctrine of res judicata—a defendant in a second suit, if a previous suit has been concluded and judgment ren-

■ In the case before us, it is significant that Safeco intervened in the Alabama action *adversely* to their insureds, the Tholens, filing an answer which denied all the material allegations of the Tholens' complaints that sought to place one proximate cause of their injuries upon the negligence of Carney, the uninsured motorist, and which alleged contributory negligence by the Tholens, which would constitute a good defense to Carney. In addition, Safeco filed a cross-complaint for indemnification against its insured, Charles Tholen, and against Carney, the uninsured motorist.[6] Thus, Safeco was unequivocally a party to that action adverse to the Tholens for purposes of the doctrine of res judicata.[7]

Safeco's motion to intervene in the Alabama action was made on the grounds that it had issued a policy of automobile liability insurance which insured plaintiffs, the Tholens, and which included "uninsured motorist protection," and since Safeco might be called upon to pay a judgment against Carney, the uninsured motorist, Safeco had a financial interest in the outcome of the litigation.

As shown by the memorandum opinion by the federal district court in that action and adopted by the court of appeals, the issue asserted in the action before us—that the three Tholens were required by the insurance policy to collect the entire judgment therein from Greenhaw, the insured motorist—was, or could have been, resolved in that action. The district court's memorandum opinion expressly resolved the issue of the extent to which Safeco's liability under the uninsured motorist section of the policy was affected by the fact that the insureds' injuries were caused by negligence of both the insured motorist, Greenhaw, and the uninsured motorist, Carney. In resolving that issue, the district court held, without equivocation, that the three Tholen plaintiffs might seek recovery against *all or any* of the joint tortfeasors; that "the Tholens, armed with judgments against both Carney and Greenhaw, are entitled

dered on the merits, may plead the judgment as a bar." (*Ferraro v. William Lyles Constr. Co.* (1980) 102 Cal.App.3d 33, 41 [162 Cal.Rptr. 238].)

[6]Although Safeco, as intervener, elected to file its cross-complaint against Tholen and Carney only, it could have filed it against Greenhaw. (Fed. Rules Civ. Proc., rule 13 (g), rule 24; 3 Moore's Federal Practice (2d ed. 1979) § 13.34, p. 13-871 et seq.; 3B Moore's Federal Practice, *supra*, § 24.17, pp. 24-721 to 24-741.)

[7]In Alabama, an insurer may intervene as a matter of right on the side of the defense in order to defeat the insured's claim. (See *Oliver v. Perry* (1974) 293 Ala. 424 [304 So.2d 583, 586].) By intervening in the federal district court action Safeco became an original party to that action. (Fed. Rules Civ. Proc., rule 24; *In re Raabe, Glissman and Co.* (S.D.N.Y. 1947) 71 F.Supp. 678; *Hartley Pen. Co. v. Lindy Pen Co.* (S.D.Cal. 1954) 16 F.R.D. 141.)

to collect, if they can, the entire amount of the judgments from Carney alone"; that "this is so even though Greenhaw is insured"; and that the policy provision asserted by Safeco "does *not* make Safeco's liability *secondary* to other sources for recovery." (Italics added.)

The Alabama court pointed out that Safeco sought to persuade the jury that Carney, the uninsured motorist, was free from fault; and that, having failed in this attempt, sought to have the court interpret the uninsured motorist provisions of the policy to limit its liability to the Tholens to a situation in which there were no other jointly liable persons such as Greenhaw, insured by State Farm, from whom the Tholens could recover their judgments; and that, at any rate, Safeco should be liable to its insureds for only that amount of their loss which could not be collected from others. In rejecting these contentions, the Alabama court also pointed out that Safeco's insurance policy with the Tholens made Safeco liable for "'all sums which the insured ... shall be legally entitled to recover as damages from the ... operator of an uninsured motor vehicle.'"

The Alabama court also made reference to the fact that Safeco's insurance policy protected it from double recovery by its insureds, the Tholens, by providing that any loss payable by Safeco shall be reduced by all sums collected by the insureds from an uninsured motor vehicle owner or operator *and* collected from any other person jointly or severally liable together with such uninsured owner or operator. It was this latter provision which Safeco relied upon in asserting that its liability was *secondary* to that of the uninsured Carney and the insured Greenhaw. But this provision, said the Alabama court, did *not* make Safeco's liability *secondary* to other sources of recovery.

The Safeco insurance policy and the respective liabilities and rights of the Tholens, Carney, Greenhaw and Safeco arising out of the Alabama three-vehicle collision constitutes the same factual situation before us that was before the Alabama court. Hence the issues now raised in Safeco's first amended complaint in this action were clearly within the scope of the Alabama action and were raised and urged by Safeco in that action. We hold that Safeco did in fact raise the issue it now claims was not raised in the Alabama action by seeking a ruling from the Alabama court that its liability to its insureds, the Tholens, was nonexisting, or, at most, secondary to the liability of Carney, the uninsured motorist, and to the liability of Greenhaw, the insured motorist. Had the Alabama court ruled as requested by Safeco, the Tholens

would have been required to collect their full judgment amount of $60,000, plus costs from Greenhaw and Carney. Since Greenhaw was insured by State Farm, there is no serious contention raised that Greenhaw was not able to pay the entire judgment.

It is circuitous reasoning on the part of Safeco to urge that, after its failure to obtain a judgment from the Alabama court to the effect that the liability of Safeco to its insureds, the Tholens, was only secondary to the liability of Carney and Greenhaw to its insureds, it is now entitled to fall back on provisions of its insurance policy—asserted in the Alabama court unsuccessfully—and claim a breach by the Tholens to accomplish indirectly what it could not accomplish directly in the Alabama action. By reason of Safeco's intervention in the Alabama action, all rights of Safeco against its insureds, the Tholens, became merged in the judgment of the Alabama court and the Alabama judgment simply did not provide Safeco with the relief which it now seeks from its insureds—the Tholens, in the case before us.

IV

■ *Has Safeco, the Insurer, Stated A Cause of Action Against Its Insureds, the Tholens, for Breach of the Implied Covenant of Good Faith and Fair Dealing Contained in the Automobile Liability Insurance Contract?*

In its first amended complaint, Safeco alleged that the Tholens breached the "Trust Agreement" provisions of the policy of insurance in (1) denying to Safeco the "proceeds of any . . . judgment" recovered by the insureds against any person responsible for the bodily injury; (2) refusing to hold in trust for the benefit of Safeco all rights of recovery against other persons; (3) failing to execute a trust agreement upon receipt of the uninsured motorist benefits; and (4) failing to do whatever was necessary to protect Safeco's rights against Greenhaw, State Farm's insured, by refraining from filing a satisfaction of judgment even though they had received total payment of the Alabama judgment from Safeco and Greenhaw, judgment debtors in the Alabama action.

Safeco advances the contention that, in violating the provisions of the "Trust Agreement" contained in the policy of insurance, its insureds, the Tholens, violated the covenant of good faith and fair dealing which is an implied term of every contract and which binds *all* parties to a

contract. Safeco relies upon the view set forth in *Commercial Union Assurance Companies* v. *Safeway Stores, Inc.* (1980) 26 Cal.3d 912 [164 Cal.Rptr. 709, 610 P.2d 1038]. "We have no quarrel with the proposition that a duty of good faith and fair dealing in an insurance policy is a two-way street, running from the insured to his insurer as well as vice versa [citations]. However, what that duty embraces is dependent upon the nature of the bargain struck between the insurer and the insured and the legitimate expectations of the parties which arise from the contract. [¶] The essence of the implied covenant of good faith in insurance policies is that '"neither party will do anything which injures the right of the other to receive the benefits of the agreement"' [citation]." (*Commercial Union Assurance Companies, supra*, 26 Cal.3d 912, 918.)

Safeco argues that the reasonable expectations of both Safeco and its insureds, the Tholens, included recognition of the provisions of the "Trust Agreement" contained in the insurance policy with the concomitant obligations of each party to carry out the provisions in order to enable each party to obtain the benefits provided in these provisions. In asserting that the *insureds* breached this covenant of good faith and fair dealing by refusing and failing to carry out their obligations to protect Safeco's rights under the "Trust Agreement" provisions of the insurance policy, Safeco calls our attention to *Liberty Mut. Ins. Co.* v. *Altfillisch Constr. Co.* (1977) 70 Cal.App.3d 789 [139 Cal.Rptr. 91].

We conclude that Safeco's reliance upon the *Altfillisch* case is not well taken. In *Altfillisch*, a property insurance case, the insurer had taken no action prior to the insured owner's entering into a contract with the owner's lessee of the property which cut off the insured owner's right—and therefore the insurer's right—to recover from the lessee for damage to the property resulting from the lessee's negligence. The *Altfillisch* court held that the insured owner's contract with its lessee constituted a breach by the insured owner of the subrogation clause of its insurance contract with the insurer.

The *Altfillisch* case bears no resemblance to the case at bench. In the case before us, Safeco, the insurer, took specific action which could well be described as a violation of its own obligation of good faith and fair dealing to its insureds, the Tholens. Thus, Safeco intervened in the Alabama action brought by the Tholens against the two other drivers involved in the collision and became an *adverse* party defendant to its own insureds, the Tholens, claiming that the Tholens had no rights

whatever against Safeco under the uninsured motorist provisions of the contract between Safeco and the Tholens because Carney, the uninsured motorist, was *not* a negligent proximate cause of the insureds' injuries and, at any rate, the Tholen driver was contributorily negligent, a good defense to any negligence on the part of Carney.

Safeco's intervention and posture in its insureds' Alabama action constitute conduct similar to that of the insurer in *Neal* v. *Farmers Ins. Exchange* (1978) 21 Cal.3d 910 [148 Cal.Rptr. 389, 582 P.2d 980]. In *Neal*, the insurer refused to pay its insured the uninsured motorist benefits under the insurance policy because of its position that there was no negligence on the part of the uninsured motorist to give the insured a cause of action against the uninsured motorist. The *Neal* court described this conduct by the insurer as being reprehensible and a clear breach of its obligation to the insured of good faith and fair dealing. Having breached its duty to the Tholens under the insurance policy, Safeco is in no position to urge that, nevertheless, the Tholens remained under an obligation to protect Safeco at the expense of Greenhaw—and her insurer, State Farm.

Even if we were to assume that the insurance contract between Safeco and the Tholens did not become merged into the Alabama judgment—an assumption which we could not validly make—the reprehensible conduct of Safeco, which amounts to a clear breach of its obligation of good faith and fair dealing under the insurance contract, constitutes a valid defense to the insureds for any alleged failure on their part to live up to their implied duty of good faith and fair dealing to see that Safeco did not lose its right to receive the benefits of the insurance agreement.

Safeco is suggesting that, even though it breached its covenant of good faith and fair dealing in an effort to preclude the Tholens from making any recovery against Safeco under the uninsured motorist provisions of the insurance policy, Safeco should, nevertheless, be able to defeat the Alabama judgment its insureds obtained against it and recover back from the Tholens the $30,000 which it owed all along to the Tholens by virtue of its obligations under its insurance policy. Such a result would put the insureds in the position of obtaining absolutely no benefits they purchased by obtaining an insurance policy from Safeco. For the law to sanction such a result from an insurer's breach of good faith and fair dealing with its insureds would rightly subject our legal system to a charge that it promotes inequity and injustice rather than promoting justice and equity.

V

*The Applicability of Insurance Code
Section 11580.2, Subdivision (c)(3)*

 Safeco makes the argument that, apart from the provisions of the insurance policy itself, the Tholens—as insureds—committed a violation of a section of the Insurance Code—a violation which gives Safeco a cause of action to recover back the amount of uninsured motorist benefits paid by Safeco to the Tholens, its insureds. The statutory provision relied upon is Insurance Code section 11580.2, subdivision (c)(3). This section provides, in part relevant to the issue before us, that "[t]he insurance coverage provided for in this section does not apply . . . . [¶] (3) To bodily injury of the insured with respect to which the insured or his representative shall, without the written consent of the insurer, make any settlement with or prosecute to judgment any action against any person who may be legally liable therefor . . . ."

Safeco urges us to hold that the Tholens' action, after receiving a joint and several judgment against Greenhaw, Carney and Safeco, of accepting $30,000 from Greenhaw's insurer, State Farm—an amount slightly less than one-half of the total judgment—and filing a complete satisfaction of judgment with the Alabama court, amounted to making a *settlement* without the written consent of Safeco, the insurer, within the meaning of Insurance Code section 11580.2, subdivision (c)(3). We reject Safeco's interpretation of this Insurance Code section. We consider that the more reasonable interpretation of section 11580.2, subdivision (c)(3), is to the effect that "settlement" refers only to a *prejudgment* settlement since the statute also refers to prosecuting an action to judgment.

Even if section 11580.2, subdivision (c)(3), of the Insurance Code were to be interpreted as applying to a "settlement" of a *judgment* by accepting from the judgment debtor a sum less than the amount of the judgment, the interpretation would not be of assistance to Safeco in the instant case. Safeco's purely voluntary intervention in the Tholens' Alabama action as a defendant adverse to its plaintiff insureds and submitting to the Alabama court the issue of whether Safeco's liability to the Tholens was secondary to Greenhaw's liability, and losing on this issue, and also requesting a judgment giving it contribution rights against the other defendants and losing on this issue also, constitute—

unequivocally and inexorably—a *waiver* of any right against the Tholens predicated on Insurance Code section 11580.2, subdivision (c)(3). It is significant that, although in the Alabama proceedings Safeco sought subrogation rights against Carney, the uninsured motorist, it inexplicably did not seek any such subrogation rights against Greenhaw.

But, more importantly, the Tholens did not make a *settlement* with Greenhaw. The Alabama judgment conferred upon the Tholens the right to collect the full amount of the judgment—$60,000 for bodily injuries—from Safeco, Carney and Greenhaw, the three defendants against whom the judgment was rendered as a joint and several judgment, with Safeco's maximum liability being limited to $30,000 by reason of its policy of insurance with the Tholens. In collecting $30,000 of the judgment from Safeco and $30,000 from State Farm as Greenhaw's insurer, the Tholens were not entering into a *settlement* with either Greenhaw or Safeco. The Tholens were exercising the right conferred by the judgment of collecting such portion of the judgment as they saw fit from each of the two solvent defendants—Safeco and Greenhaw.

Safeco voluntarily put itself into the position of becoming a defendant in the Alabama action by the process of intervention. The Tholens' collection of $30,000 from Safeco was thus made pursuant to the right conferred by the Alabama judgment and not by way of convincing Safeco to pay this sum pursuant to the Tholens' insurance policy with Safeco. That Safeco did not relish becoming a joint and several *judgment* debtor to its insured, the Tholens, is patently evident. Safeco appealed from the judgment to the United States Court of Appeals for the Fifth Circuit. The district court's judgment was affirmed. (*Tholen v. Carney, supra,* 555 F.2d 479.) Had Safeco not intervened in the Alabama action, the Tholens might well have obtained the same judgment against Carney and Greenhaw only and proceeded to collect the entire judgment from State Farm, Greenhaw's insurer. But the decision to intervene having been made by Safeco, well-settled principles of law, as articulated previously herein, preclude Safeco from being able to allege a valid cause of action in the case before us to recover the $30,000 paid to its insureds pursuant to the Alabama judgment. No injustice flows from this result since there is no double recovery by the Tholens, and Safeco, the insurer, has had its day in court as a defendant and cross-complainant in the Alabama adversary court proceedings.

## VI

### *The Trial Court Committed No Abuse of Discretion in Sustaining the Tholens' Demurrer Without Granting Safeco Further Leave to Amend Its First Amended Complaint*

Finally, Safeco urges the point that the trial court prejudicially erred in sustaining the demurrers to its first amended complaint without granting Safeco leave to amend. The only argument advanced is the theory that discretion is abused in sustaining a demurrer to a complaint without leave to amend unless disclosures on the face of the complaint itself point to its being incapable of amendment. No authority is cited for this contention. Our examination of the record indicates that there was no substantial change in Safeco's first amended complaint from the original complaint to which general demurrers were sustained with leave to amend.

Safeco does not suggest what amendments could be made to avoid the bar of the defense of res judicata. Safeco asserts simply that the allegations of its first amended complaint set forth a good cause of action against the Tholens for recovery of the monies paid to them pursuant to the Alabama judgment. This is not a showing that the trial court abused its discretion in sustaining demurrers to Safeco's first amended complaint without leave to amend.

. The order of dismissal as to defendants Charles D. Tholen, Betty Lee Tholen, and Kerry Tholen is affirmed.

Lillie, Acting P. J.,[8] and Title, J.,* concurred.

A petition for a rehearing was denied May 1, 1981, and appellant's petition for a hearing by the Supreme Court was denied May 27, 1981.

---

[8]This opinion was originally filed on December 31, 1980, with the identical panel. Plaintiff petitioned for a hearing before the California Supreme Court.

On March 11, 1981, the California Supreme Court filed the following order: "Petition for hearing granted. The cause is transferred to this court and retransferred to the Court of Appeal, Second District, Division One, for re-issuing of its opinion with the appropriate designation of Lillie, J., as Acting Presiding Justice. ( Cal. Const., art. VI, § 3.)"

*Assigned by the Chairperson of the Judicial Council.