[No. G029927. Fourth Dist., Div. Three. May 30, 2003.]

JEFFREY S. DAWSON, Plaintiff and Respondent, v.
JAMES TOLEDANO et al., Defendants and Appellants.

**COUNSEL**

James Toledano, in pro. per., and for Defendants and Appellants.

Richard L. Spix for Plaintiff and Respondent.

**OPINION**

**MOORE, J.**—A personal injury plaintiff, himself an attorney, was sanctioned for prosecuting a frivolous appeal. He immediately filed a malpractice action against the attorney who had represented him in the appeal, contending an attorney who prosecutes a frivolous appeal thereby commits malpractice per se. The trial court agreed, and entered summary judgment against the appellate practitioner.

The appellate practitioner appeals. He argues the trial court erred in applying res judicata and collateral estoppel principles so as to preclude him from asserting that the appeal was not frivolous and that he did not commit malpractice. We agree with the appellate practitioner, and reverse and remand. When a client is sanctioned for the filing of a frivolous appeal, it does not mean that his or her attorney has committed malpractice as a matter of law and has no right to a trial on the merits.

I

FACTS

A. *Snow Summit Litigation*

Attorney Jeffrey S. Dawson (Dawson) was injured while skiing when he fell and slid into a wooden fence. Dawson filed a personal injury action against Snow Summit, Inc., the operator of the ski area (*Dawson v. Snow Summit, Inc.* (Super. Ct. San Bernardino County, 1993, No. BCV007800)). Snow Summit, Inc., moved for summary judgment, citing the doctrine of primary assumption of the risk, as set forth in *Knight v. Jewett* (1992) 3 Cal.4th 296 [11 Cal.Rptr.2d 2, 834 P.2d 696]. Summary judgment was entered in favor of Snow Summit, Inc.

Dawson, at that point acting in propria persona, filed a notice of appeal in *Dawson v. Snow Summit, Inc.* (Nov. 4, 1996, E012676 [nonpub. opn.]) (*Snow Summit*). Toledano & Wald and Attorney James Toledano (collectively Toledano) thereafter represented him in the *Snow Summit* appeal.

The *Snow Summit* court issued an order to show cause re frivolous appeal. A hearing was held at which both Dawson and Toledano were present.[1] In its order and decision on order to show cause, the court expressed several reasons for awarding sanctions, including both its conclusion that any reasonable attorney would agree the appeal was totally and completely without merit and the behavior of Dawson personally. It ordered Dawson to pay the court $5,908.26, as the average cost to the taxpayers to process a civil appeal in that court, and to pay Snow Summit, Inc., the amount of its reasonable attorney fees incurred in responding to the appeal. By separate opinion, the court also affirmed the summary judgment against Dawson.

## B. *Malpractice Litigation*

Dawson then filed a malpractice action against Toledano for having recommended the pursuit of what was ultimately determined to be a frivolous appeal (*Dawson v. Toledano* (Super. Ct. Orange County, 2001, No. 784627)) (malpractice action). Toledano filed a cross-complaint for attorney fees due and owing.

Subsequently, Dawson filed a motion for summary judgment against Toledano. On October 11, 2000, the court entered an order granting the motion, in which it found there was no triable issue of material fact as to Toledano's malpractice. It ordered final judgment to be entered in favor of Dawson and against Toledano. On December 11, 2000, the matter came on for trial on the issue of damages and on February 1, 2001, the court entered judgment in favor of Dawson and against Toledano in the amount of $38,875.93 plus costs of suit.

On August 20, 2001, trial commenced on the issue of Toledano's cross-complaint and on September 14, 2001, the court entered judgment against Toledano thereon.

Dawson filed a motion to amend the judgment, which the court heard on October 3, 2001. That same date it granted the motion and amended the February 1, 2001 judgment to include Attorney David E. Wald (Wald) as a defendant liable on the judgment.

Toledano appeals from the February 1, 2001 judgment, the September 14, 2001 judgment, and the October 3, 2001 amended judgment. Wald, specially appearing, also appeals from the amended judgment.

---

[1] The record does not reflect whether the order to show cause was directed to Dawson only, or to both Dawson and Toledano. We only know that both of them attended the hearing.

II

ANALYSIS

A. *Summary Judgment Review*

■ On review of a summary judgment, we "examine the record de novo and independently determine whether [the] decision is correct. [Citation.]" (*Colarossi v. Coty US Inc.* (2002) 97 Cal.App.4th 1142, 1149 [119 Cal.Rptr.2d 131].) In undertaking our independent review of the evidence submitted, we apply " 'the same three-step process required of the trial court: First, we identify the issues raised by the pleadings, since it is these allegations to which the motion must respond; secondly, we determine whether the moving party's showing has established facts which negate the opponent's claims and justify a judgment in movant's favor; when a summary judgment motion prima facie justifies a judgment, the third and final step is to determine whether the opposition demonstrates the existence of a triable, material factual issue. [Citations.]' " (*Waschek v. Department of Motor Vehicles* (1997) 59 Cal.App.4th 640, 644 [69 Cal.Rptr.2d 296].)

B. *Trial Court Pleadings*

In the motion for summary judgment, Dawson argued: (1) summary judgment must be granted when there is no triable issue of material fact; (2) there could be no triable issue because Toledano was collaterally estopped from arguing that the *Snow Summit* appeal was not frivolous; (3) the issue of whether the appeal was frivolous was res judicata; and (4) the prosecution of a frivolous appeal is malpractice as a matter of law.

Dawson also provided the declaration of Attorney Anthony G. Chavos, who had reviewed the superior court and appellate court pleadings and files in the *Snow Summit* case and concluded any reasonably experienced attorney would agree the appeal was frivolous. He also stated his opinion that Toledano had acted below the standard of care in the community by prosecuting a frivolous appeal.

In opposition to the motion for summary judgment, Toledano argued neither the doctrine of res judicata nor the doctrine of law of the case applied. He also argued at length that he had not committed malpractice inasmuch as the legal positions he had asserted in *Snow Summit* were consistent with the state of the law at the time. Toledano also maintained that the *Snow Summit* trial court erred in granting summary judgment against Dawson. In addition, Toledano claimed that the appellate court in *Snow*

*Summit* awarded sanctions based not on his own conduct, but on the behavior of Dawson himself.

## C. *Order and Decision on Order to Show Cause*

To understand Toledano's argument about Dawson's role in the outcome, a review of the order and decision on order to show cause in the *Snow Summit* appeal is required. In that order, the *Snow Summit* court gave several reasons for imposing sanctions. Among them, it stated, "Plaintiff, as an attorney himself, knows full well that this is a case which never should have been filed, let alone appealed. This is true because it is without question an appeal which 'any reasonable attorney would agree [to be] totally and completely without merit.' (*In re Marriage of Flaherty* [(1982)] 31 Cal.3d 637, 650 [183 Cal.Rptr. 508, 646 P.2d 179].)" This conclusion was based in part on the court's analysis of the primary assumption of the risk doctrine and summary judgment law. However, the court stated its conclusion was founded on two additional reasons as well, each of which was sufficient standing alone.

It explained: "Beyond application of the primary assumption of the risk doctrine, . . . this is one of those cases which should never have been filed. . . . Plaintiff's own behavior caused his injury, i.e., under established negligence principles, it was not foreseeable that a person would behave as plaintiff did so as to collide with the fence." The court underscored that the undisputed facts "demonstrate conclusively that plaintiff put himself at risk by skiing too fast for existing conditions."

In addition, the court appeared to question the veracity of Dawson. It stated that, given the record, Dawson "[could not] truthfully argue that he had slowed down before he 'caught an edge.' . . . [U]nless he was traveling at a reckless rate of speed when he fell, he would not have slid the distance he did on this gentle slope . . . with enough force to cause serious injury to his knee when he collided with the fence."

Finally, the court also stated that, "Accepting for purposes of discussion that plaintiff may have been justified in filing his action, whether *the appeal* is frivolous finally depends upon a careful review of what occurred in the trial court. In this regard, by electing to appeal, plaintiff himself (an attorney) demonstrated a palpable lack of understanding of the summary judgment procedure." The appellate court explained that Dawson had failed to correctly identify the issues framed by the pleadings and that the trial court had been compelled to grant summary judgment due to Dawson's failure to submit any evidence to raise a triable issue of material fact.

It is readily apparent that the *Snow Summit* court determined that the appeal was frivolous because it was unmeritorious. Yet it is also evident that the court resolved to sanction Dawson personally for other reasons as well. In its view, Dawson had caused the accident by his own reckless behavior, and as an attorney he should have known better than to file the complaint at all. Moreover, the court indicated it questioned his truthfulness in the proceedings before it. Given the fact the court imposed sanctions in part because of the conduct of the client, not the conduct of the appellate attorney, it would be a sorry result to hold that the appellate attorney had committed malpractice as a matter of law based on the sanctions award.

## D. *Res Judicata and Collateral Estoppel*

### (1) *General principles of res judicata*

■ However, Dawson seeks to reorient our attention away from the various reasons underlying the sanctions award, and towards the *Snow Summit* court's conclusion, as stated in the order and decision on order to show cause, that the appeal was frivolous because any reasonable attorney would agree it was totally and completely without merit. He argues that Toledano is bound by that adjudication under the doctrines of res judicata and collateral estoppel.

In his motion for summary judgment against Toledano, Dawson cited only two cases addressing res judicata and collateral estoppel principles, i.e., *Rynsburger v. Dairymen's Fertilizer Coop., Inc.* (1968) 266 Cal.App.2d 269 [72 Cal.Rptr. 102] and *Safeco Insurance Co. v. Tholen* (1981) 117 Cal.App.3d 685 [173 Cal.Rptr. 23]. Neither of those cases pertains to a factual situation remotely similar to the one before us. Nonetheless, the cases contain standard statements of the applicable principles of law.

■ As stated in *Rynsburger v. Dairymen's Fertilizer Coop., Inc., supra,* 266 Cal.App.2d at pages 275-276: "Under the doctrine of res judicata, an existing final judgment on the merits of a cause rendered by a court of competent jurisdiction is, in all subsequent actions, conclusive of the rights of the parties, and their privies, on all material issues that were or might have been determined. [Citations.]" "The application of the doctrine in a given case depends on affirmative answers to these questions: 'Was the issue decided in the prior adjudication identical with the one presented in the action in question? Was there a final judgment on the merits? Was the party against whom the plea [of res judicata] is asserted a party or in privity with a party to the prior adjudication?' [Citation.]" (*Id.* at p. 276.) In the case before us, these questions are not all answered in the affirmative.

(2) *Identity of issues*

██ Assuming that the sanctions order in *Snow Summit* could properly be construed as a final judgment, it nonetheless could not be construed as the adjudication of an issue identical to the one in the case before us. At issue in *Snow Summit* was whether Dawson should be sanctioned for maintaining a frivolous appeal. As already shown, some of the considerations that went into the resolution of the issue had to do with the conduct of Dawson personally, not his attorney. At issue in the action against Toledano, on the other hand, was whether he had committed malpractice in representing Dawson. That issue is directed at the conduct of Toledano to the exclusion of Dawson. To the extent the *Snow Summit* order was based on the conduct of Dawson, it cannot be used to determine the propriety of Toledano's actions.

Furthermore, the legal analysis to be applied in deciding whether to levy sanctions for the prosecution of a frivolous appeal is not identical to the one used to determine whether an attorney has committed malpractice. In addressing the distinction, we first examine the policies relevant to the imposition of sanctions in connection with a frivolous appeal.

(a) *Frivolous appeal determination*

██ The Supreme Court, in the seminal case of *In re Marriage of Flaherty, supra*, 31 Cal.3d 637 (*Flaherty*), underscored the difficulty of finding a uniform definition of a "frivolous appeal" in California case law. As the court observed, "One commentator, calling the definitional problems 'vexing,' described judicial attempts to distinguish a frivolous appeal from a merely meritless appeal as 'diverse and, on occasion, entertaining.' [Citations.] Witkin notes that, 'No useful method of classifying frivolous appeals suggests itself . . . .' [Citation.]" (*Id.* at pp. 646-647.)

Ultimately, the Supreme Court in *Flaherty, supra,* 31 Cal.3d at pages 649-650, provided guidance by stating that two standards apply, a subjective one and an objective one. The former looks to the motives of the attorney and the client and the latter looks at the merits of the appeal from a reasonable attorney's perspective. (*Ibid.*) It stated, "Thus, an appeal should be held to be frivolous only when it is prosecuted for an improper motive—to harass the respondent or delay the effect of an adverse judgment—or when it indisputably has no merit—when any reasonable attorney would agree that the appeal is totally and completely without merit. [Citation.]" (*Id.* at p. 650.)

██ Dawson ignores the portions of the order and decision on order to show cause that were related to the subjective standard, and focuses only on

the portion directed to the objective standard, i.e., whether any reasonable attorney would agree that the appeal was totally and completely meritless. He concludes that because the *Snow Summit* court answered that question in the affirmative, Toledano committed malpractice per se. He cites no authority for this proposition, explaining simply that it is axiomatic that it constitutes malpractice to prosecute a frivolous appeal. We decline to adopt the proffered axiom. It ignores the legal requirements for imposition of a malpractice award.

### (b) *Malpractice determination*

The elements of a legal malpractice action are: "(1) the duty of the [attorney] to use such skill, prudence, and diligence as other members of his profession commonly possess and exercise; (2) a breach of that duty; (3) a proximate causal connection between the negligent conduct and the resulting injury; and (4) actual loss or damage resulting from the [attorney's] negligence. [Citations.]" (*Budd v. Nixen* (1971) 6 Cal.3d 195, 200 [98 Cal.Rptr. 849, 491 P.2d 433]; see also *Crookall v. Davis, Punelli, Keathley & Willard* (1998) 65 Cal.App.4th 1048, 1067 [77 Cal.Rptr.2d 250]; *Sukoff v. Lemkin* (1988) 202 Cal.App.3d 740, 744 [249 Cal.Rptr. 42].) The plaintiff has the burden of proving each of these elements. (*Sukoff v. Lemkin, supra,* 202 Cal.App.3d at p. 744.) We shall now consider the application of the plaintiff's burden in a malpractice action of the type before us.

In a case such as this, we start with the fact that a court in another proceeding has adjudicated an appeal to be frivolous, that being a question of law. (*De Anza Santa Cruz Mobile Estates Homeowners Assn. v. De Anza Santa Cruz Mobile Estates* (2001) 94 Cal.App.4th 890, 919 [114 Cal.Rptr.2d 708].) Whether the appellate practitioner who handled that appeal has breached a duty and whether any breach proximately caused harm are ordinarily questions of fact for the jury. (*Crookall v. Davis, Punelli, Keathley & Willard, supra,* 65 Cal.App.4th at p. 1067; *Lysick v. Walcom* (1968) 258 Cal.App.2d 136, 150, 153 [65 Cal.Rptr. 406, 28 A.L.R.3d 368].) Thus, at the outset, we observe that were we to accept the notion that once an appeal has been adjudged frivolous by a court, the attorney is deemed to have committed malpractice, we would be usurping the province of the jury to decide whether, as a factual matter, a breach has occurred and the breach has proximately caused harm to the client. (*Ishmael v. Millington* (1966) 241 Cal.App.2d 520, 528-530 [50 Cal.Rptr. 592].) Of course, breach of duty and proximate cause may on occasion be resolved as matters of law, if there can be no reasonable doubt as to whether the attorney's conduct fell below the standard of care or if reasonable minds could not differ as to whether there was causation. (*Lysick v. Walcom, supra,* 258 Cal.App.2d at pp. 150, 153.)

Yet those instances are very rare (*id.* at p. 153), and this is not one of those instances.

In addressing breach of duty, "the crucial inquiry is whether [the attorney's] advice was so legally deficient when it was given that he [or she] may be found to have failed to use 'such skill, prudence, and diligence as lawyers of ordinary skill and capacity commonly possess and exercise in the performance of the tasks which they undertake.' [Citation.]" (*Smith v. Lewis* (1975) 13 Cal.3d 349, 356 [118 Cal.Rptr. 621, 530 P.2d 589, 78 A.L.R.3d 231], disapproved on another ground in *In re Marriage of Brown* (1976) 15 Cal.3d 838, 851, fn. 14 [126 Cal.Rptr. 633, 544 P.2d 561, 94 A.L.R.3d 164]; *Crookall v. Davis, Punelli, Keathley & Willard, supra,* 65 Cal.App.4th at p. 1067.) It is unclear on the record before us whether Toledano's advice was indeed that deficient. He claims to have asserted that Dawson had a viable appeal under the principles established in *Knight v. Jewett, supra,* 3 Cal.4th 296, arguing that Snow Summit, Inc., had a duty not to increase the inherent risks of skiing by putting up a hard wooden fence as a barrier where any skier who fell could hit it. We cannot say in the abstract that such an argument is inherently unmeritorious. (See *Van Dyke v. S.K.I. Ltd.* (1998) 67 Cal.App.4th 1310 [79 Cal.Rptr.2d 775].) At the same time, we do not know whether it was properly preserved for appeal. Moreover, expert testimony may be required, as is frequently the case, in order to resolve the factual issue of whether the attorney adhered to the standard of care. (*Wilkinson v. Rives* (1981) 116 Cal.App.3d 641, 647-648 [172 Cal.Rptr. 254].)

Even were we inclined to skip this step in the analysis and state that once a court has held an appeal to be frivolous the attorney handling the appeal must necessarily have breached the duty of care, this would not mean that the attorney would be liable ipso jure in a malpractice action. The final step in the analysis would still need to be addressed, because the mere breach of the standard of care does not give rise to a cause of action for malpractice. (*Budd v. Nixen, supra,* 6 Cal.3d at p. 200.) "[U]ntil the client suffers appreciable harm as a consequence of his [or her] attorney's negligence, the client cannot establish a cause of action for malpractice." (*Ibid.*; fn. omitted; *Sukoff v. Lemkin, supra,* 202 Cal.App.3d at p. 744.)

Here, there are obvious concerns as to whether, and to what extent, Toledano's recommendation to pursue the appeal as a potentially meritorious one was the cause of the harm, that is to say, whether and to what extent it prompted the sanctions award. The *Snow Summit* court made clear that it awarded sanctions based at least in part on the behavior of Dawson alone. Aside from that, we note that it was Dawson, himself an attorney, who filed

the appeal—not Toledano. A question arises as to whether Dawson would have abandoned the appeal, or whether he would have prosecuted it either in propria persona or with the assistance of a different attorney, had Toledano not espoused the virtues of the appeal.

The point of the matter is that a " 'client claiming that his [or her] attorney was negligent in connection with litigation has the burden of proving that damages resulted, this burden involving, usually, the difficult task of demonstrating that, but for the negligence complained of, the client would have been successful in the prosecution or defense of the action in question.' [Citation.]" (*Sukoff v. Lemkin, supra,* 202 Cal.App.3d at p. 744.) On the record before us, we cannot hold, as a matter of law, that "but for" Toledano's recommendation to pursue the appeal, the *Snow Summit* court would not have sanctioned Dawson. This is indeed the type of factual issue that should be resolved by the trier of fact after a full and fair presentation of the facts.

The admonition of the Supreme Court in *Flaherty, supra,* 31 Cal.3d 637, supports our conclusion that an attorney is not necessarily liable for malpractice when an appeal he or she is handling is adjudged to be frivolous. The Supreme Court repeatedly cautioned lower courts "to avoid a serious chilling effect on the assertion of litigants' rights on appeal. Counsel and their clients have a right to present issues that are arguably correct, even if it is extremely unlikely that they will win on appeal." (*Flaherty, supra,* 31 Cal.3d at p. 650.) The court urged the application of great care in the sanction of attorneys for filing frivolous appeals, lest they fail to protect their clients' interests and omit to file appeals out of fear of being sanctioned for so doing. (*Id.* at pp. 647-651.) A fortiori, we must be wary of enunciating a rule whereby an attorney who files an appeal later held to be frivolous is liable not only for a sanctions award but also an automatic malpractice judgment.

### (c) *Conclusion re identity of issues*

Thus, we conclude that, for the purposes of the application of the principles of res judicata, the issue whether an appeal is frivolous is not identical to the issue of whether an attorney who pursues an appeal that is ultimately adjudged to be frivolous has committed malpractice. Without an identity of issues, the doctrine of res judicata does not apply.

### (3) *Privity*

Even more simply, however, the doctrine is inapplicable because Toledano was not a party to the *Snow Summit* litigation and he was not in

privity with his client, Dawson, in that matter. "Privity involves a person so identified in interest with another that he represents the same legal right. [Citations.]" (*Rynsburger v. Dairymen's Fertilizer Coop., Inc., supra,* 266 Cal.App.2d at p. 277; see also *Clemmer v. Hartford Insurance Co.* (1978) 22 Cal.3d 865, 875 [151 Cal.Rptr. 285, 587 P.2d 1098].) It is true, as Dawson asserts, that Toledano, present at the hearing on the order to show cause, had an interest in arguing that Dawson should not be sanctioned because the appeal was not frivolous. However, that does not mean that the two of them had such a unity of interest that they represented the same legal right. Hardly. The right of Dawson individually to prosecute his personal injury action without the imposition of a sanctions award is not identical to the right of Toledano to defend himself in a legal malpractice action.

More to the point, the doctrine of res judicata "necessarily requires the litigation of an issue (or at least a fair opportunity to litigate) between parties *with adversarial interests.* The doctrine cannot be applied to immunize the outcome of a proceeding where the parties were not adversaries. [Citations.]" (*Schultz v. Harney* (1994) 27 Cal.App.4th 1611, 1620 [33 Cal.Rptr.2d 276] [court approval of an attorney's fee in probate proceeding did not immunize that attorney from litigation with respect to that fee in subsequent malpractice action].) Very simply put, Dawson and Toledano were not adversaries in the *Snow Summit* litigation. Just the opposite, Toledano was Dawson's fiduciary. (*Ibid.*)

An attorney, such as Toledano, present on behalf of his or her client at a hearing on an order to show cause, is duty bound to behave in his or her fiduciary capacity, as the client's representative. When sanctions are at issue, an attorney who argues he or she has done no wrong may well be acting against the client's best interests, by impliedly placing the blame on the client. As a practical matter, it may be a ticklish situation for the attorney to endeavor to defend himself or herself at such a hearing. Even worse, once the appeal is ruled to be frivolous and a sanctions award is entered against the client, the attorney may have no opportunity to protest afterwards. That is to say, if the client does not choose to challenge the sanctions award, the attorney is without the power to do so himself or herself. The attorney is stuck with the frivolous appeal ruling, with no available method of review. If an attorney were held liable for malpractice as a matter of law following a determination that an appeal was frivolous, what opportunity would the attorney have to respond to the charge of malpractice?[2]

As expressed in *Safeco Insurance Co. v. Tholen, supra,* 117 Cal.App.3d at pages 695-696, the doctrine of res judicata "is founded upon the rationale

---

[2]While Toledano does not quite raise the issue, and we therefore do not base our opinion upon it, we question whether to apply the doctrine of res judicata in a case such as this would

that the party affected, or some other party with whom he is in privy, has actually litigated, or has had the opportunity to litigate, the same matter in a former action in a court of competent jurisdiction, and should not be permitted to litigate the same matter again. To permit relitigation would sanction harassment and vexation of the opponent. [Citation.]" Here, the malpractice cause of action has not been litigated. Toledano has not had the opportunity to litigate either his adherence to the standard of care in the legal community or causation.

Moreover, the public policies underlying the doctrine of res judicata would not be served by applying the doctrine in this instance. The point of applying the doctrine would be to avoid harassing Snow Summit, Inc., Dawson's opponent in the prior litigation. But Snow Summit, Inc., is not a party to this litigation and will not be harassed by giving Toledano his day in court.

### (4) Collateral estoppel

The doctrine of collateral estoppel is also inapplicable. ■ Under that doctrine, when a new action is brought on a different cause of action, the judgment in a prior action bars reconsideration of all issues litigated therein. (*Safeco Insurance Co. v. Tholen, supra,* 117 Cal.App.3d at p. 696.) "Thus, where two lawsuits are brought and they arise out of the same alleged factual situation, and although the causes of action or forms of relief may be different, the prior determination of an issue in the first lawsuit becomes conclusive in the subsequent lawsuit between the same parties with respect to that issue . . . . [Citation.]" (*Id.* at p. 697; see also *Clemmer v. Hartford Insurance Co., supra,* 22 Cal.3d at p. 874.)

■ Here, the two lawsuits do not arise out of the same alleged factual situation. The first had to do with a skiing accident and the second had to do with alleged attorney malpractice. On top of that, the lawsuits were not between the same parties. (See *Clemmer v. Hartford Insurance Co., supra,* 22 Cal.3d at p. 874.)

### E. Application of Code of Civil Procedure Section 437c

"Under summary judgment law, any party to an action, whether plaintiff or defendant, 'may move' the court 'for summary judgment' in his [or her]

---

be to violate the due process safeguards discussed in *Flaherty, supra,* 31 Cal.3d at pages 651-654.

favor on a cause of action . . . or defense (Code Civ. Proc., § 437c, subd. (a))—a plaintiff 'contend[ing] . . . that there is no defense to the action,' a defendant 'contend[ing] that the action has no merit' (*ibid.*). The court must 'grant[]' the 'motion' 'if all the papers submitted show' that 'there is no triable issue as to any material fact' (*id.*, § 437c, subd. (c))—that is, there is no issue requiring a trial as to any fact that is necessary under the pleadings and, ultimately, the law [citations]—and that the 'moving party is entitled to a judgment as a matter of law' (Code Civ. Proc., § 437c, subd. (c))." (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 843 [107 Cal.Rptr.2d 841, 24 P.3d 493].)

"In moving for summary judgment, a 'plaintiff . . . has met' his [or her] 'burden of showing that there is no defense to a cause of action if' he [or she] 'has proved each element of the cause of action entitling' him [or her] 'to judgment on that cause of action. Once the plaintiff . . . has met that burden, the burden shifts to the defendant . . . to show that a triable issue of one or more material facts exists as to that cause of action or a defense thereto. . . .' (Code Civ. Proc., § 437c, subd. (*o*)(1).)" (*Aguilar v. Atlantic Richfield Co., supra,* 25 Cal.4th at p. 849.)

In this case, Dawson, as the plaintiff, asserted there is no defense to the malpractice cause of action because the *Snow Summit* court has adjudicated the appeal to be frivolous, the doctrines of res judicata and collateral estoppel bar Toledano from contesting that adjudication, and it is axiomatic that an attorney who recommends pursuit of a frivolous appeal has committed malpractice per se.[3] His contentions are flawed. The doctrines of res judicata and collateral estoppel are not applicable and there is no law to support the proffered axiom. Dawson based his motion for summary judgment on erroneous legal propositions. Therefore, he did not meet his burden to show there was no defense to the action and the burden did not shift to Toledano to raise a triable issue of material fact. The trial court erred in granting summary judgment.[4] (See *Aguilar v. Atlantic Richfield Co., supra,* 25 Cal.4th at p. 849; see also *Ishmael v. Millington, supra,* 241 Cal.App.2d at

---

[3]On appeal before this court, Dawson argues that his malpractice complaint was based not only on the frivolous appeal determination in *Snow Summit*, but also on the fact that Toledano remained silent at the hearing on the order to show cause re frivolous appeal, shirking his duty to put on a defense. However, Dawson did not raise the latter point in his motion for summary judgment. Moreover, his charge simply demonstrates the existence of yet another triable issue of material fact as to Toledano's alleged malpractice.

[4]Toledano requests that, in the interests of justice, the matter be remanded to a different judge. We decline to make an order with respect to the trial judge. However, Toledano is at liberty to file either a peremptory challenge or a challenge for cause in the trial court on remand.

pp. 528-530 [error to grant summary judgment in legal malpractice action because breach of duty and causation are questions of fact for the jury].)

F. *Appeal of Wald*

Wald complains that the court erred in granting the motion to name him as an additional judgment debtor. He claims that he was never named in the complaint or served with process, and the motion was barred by the statute of limitations. Given our holding that the summary judgment must be reversed, we need not address whether it was proper to amend the judgment to add Wald as a judgment debtor.

G. *Toledano's Motion for Summary Judgment*

Toledano requests not only that this court reverse the summary judgment in favor of Dawson, but also that we order entry of judgment in favor of Toledano himself. As it turns out, Dawson was not the only one who filed a motion for summary judgment in the malpractice action. The record contains a copy of Toledano's points and authorities in opposition to plaintiff's motion for summary judgment and in support of motion for summary judgment for defendants. In those points and authorities, Toledano argued that, in the *Snow Summit* litigation, he had asserted legal positions consistent with the law at the time, so that, as a matter of law, he could not have committed malpractice.

However, Toledano has not provided an adequate record for review. He has not provided a copy of his motion for summary judgment or of any opposition thereto that Dawson may have filed. Moreover, the record does not contain copies of pleadings filed in the *Snow Summit* litigation that would permit a determination as to whether the arguments he made in that litigation immunized him from any possible malpractice action. We deny Toledano's request to order the entry of summary judgment in his favor. (See *Kurinij v. Hanna & Morton* (1997) 55 Cal.App.4th 853, 865 [64 Cal.Rptr.2d 324] [appellant has duty to present adequate record for review].)

III

DISPOSITION

The February 1, 2001 judgment, the September 14, 2001 judgment, and the October 3, 2001 amended judgment are reversed. The case is remanded

for further proceedings consistent with this opinion. Toledano and Wald shall recover their costs on appeal.

Sills, P. J., and Rylaarsdam, J., concurred.