[No. B089152. Second Dist., Div. Seven. Apr. 17, 1997.]

OJAVAN INVESTORS, INC., et al., Plaintiffs, Cross-defendants and Appellants, v.
CALIFORNIA COASTAL COMMISSION et al., Defendants, Cross-complainants and Respondents.

**[Opinion certified for partial publication.*]**

*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of parts II, III and IV of Discussion.

## Counsel

Fosbinder & Fosbinder, James H. Fosbinder, Rhonda M. Fosbinder and Babak Naficy for Plaintiffs, Cross-defendants and Appellants.

Daniel E. Lungren, Attorney General, Roderick E. Walston, Chief Assistant Attorney General, Jan S. Stevens, Assistant Attorney General, G. R. Overton and Daniel A. Olivas Deputy Attorneys General, for Defendants, Cross-complainants and Respondents.

## OPINION

**JOHNSON, J.**—Plaintiffs Ojavan Investors, Inc., Port Lemore Corp., Sutton Properties, Inc., Sealubber, Inc., Pakid Holdings, Malek Agency Ltd., Quelimane Co., MTG Alliance Corp., Western Land Bank, Highland Group, Inc., P.U. Enterprise and Peter Bogart (at times collectively Ojavan Investors) appeal the trial court's judgment imposing civil fines and a permanent injunction against violations of deed restrictions entered into by prior landowners as a condition of the California Coastal Commission's (Commission) grant of coastal development permits. The Commission required the deed restrictions to further the purposes of the California Coastal Act of 1976 (Coastal Act). (Pub. Resources Code, § 30000 et seq.)[1] Ojavan Investors also contest an order granting summary adjudication on the issue of Coastal Act liability raised in the Commission's cross-complaint, as well as evidentiary exclusionary orders, an order precluding a jury trial and an order imposing discovery sanctions and declaring Bogart the "alter ego" of the corporate plaintiffs.

### FACTUAL AND PROCEDURAL BACKGROUND

On December 19, 1979, and May 10, 1990, the Commission issued permits to landowners David Leanse and Larry Thorne for the development of real estate in the Malibu area. The permits required the recombination of 77 lots into 2 lots through the recordation of deed restrictions entered into by Sophisticated Investments, Inc., and Dan Bochner, successors in interest to Leanse and Thorne. Although the development projects were not related to each other, the Commission found they created a risk of adverse cumulative effects on coastal resources and public access to the coast.

To mitigate the projects' environmental impacts, the Commission conditioned approval of the permits on the landowners' participation in the Commission's Transfer Development Credits (TDC) Program. Under the TDC Program, the Commission approved new development projects in the Malibu area on the condition landowners extinguish the development capacity of other real property.[2]

In four declarations of restrictions, the first executed by Sophisticated Investments on June 19, 1981, and others executed by Bochner on July 11, 1984, and April 3, 1990, the successor landowners stated their intent to

[1]Unless otherwise indicated, all references to sections are to the Public Resources Code.

[2]"The TDC Program has been recognized as a well-established mechanism by which the Commission . . . attempts to balance a private property owner's ability to obtain development permits with the state's interest in protecting natural resources from unbridled development. [Citation.]" (*Ojavan Investors, Inc.* v. *California Coastal Com.* (1994) 26 Cal.App.4th 516, 520, fn. 3 [32 Cal.Rptr.2d 103].)

recombine and unify the property, and make the declarations perpetual and enforceable.[3] The Los Angeles County Recorder's Office recorded the declarations on July 2, 1981, July 23, 1984, and June 7, 1990.

All four declarations of restrictions stated the landowners agreed to six restrictions, including the following: "(1) All portions of the Subject Lands shall be recombined and unified, and shall henceforth be considered and treated as a single parcel of land for all purposes with respect to the lands . . . ; (2) The single parcel created herein shall not be divided or otherwise alienated from the combined and unified parcel; . . . (4) Any breach of this Declaration of Restrictions shall constitute an abrogation of this contractual agreement which flows from the terms of the Permit and shall therefore render the Declarants or their successors liable pursuant to the provisions of Chapter 9 of Division 20 of the Public Resources Code; (5) This Declaration of Restrictions shall constitute a covenant running with the land . . . ; and (6) This Declaration of Restrictions . . . shall bind the Declarants and their successors, heirs, and assigns in perpetuity and shall benefit the People of the State of California."

Notwithstanding the recombination of the 77 lots into 2 lots, Los Angeles County continued to tax the lots individually.

On January 16, 1991, Commission Staff Counsel John Bowers wrote a letter in response to questions regarding the effect of a tax lien foreclosure sale on the restrictions recorded pursuant to the Commission's TDC Program. Bowers opined a court would likely hold a purchaser acquires an ownership interest in the entire recombined parcel as a whole.[4]

In February 1991, without the Commission's knowledge or approval, Ojavan Investors bought 54 of the 77 deed-restricted lots from Bochner. According to Bogart, an officer of most of the corporate appellants, Bochner did not inform Bogart the lots were not supposed to be sold separately.[5]

Thereafter, in an auction brochure, appellants advertised the sale of some of the development-restricted lots. The brochure announced, "Unbelievably

---

[3] In 1983 Sophisticated sold its interest in its recombined lot to Bochner.

[4] According to appellants' opening brief, the letter concerned Los Angeles County's announcement it would foreclose on Bochner's tax delinquent lots. However, this letter is silent on the subject, merely expressing the Commission's legal opinion of the effect of a tax lien foreclosure on the TDC restrictions. Having failed to cite any other portion of the record to support their factual statement, appellants violate California Rules of Court, rule 15. We exercise our discretion to disregard this briefing defect and deem the brief as if it were properly prepared. (Cal. Rules of Court, rule 18.)

[5] In support of this factual statement, appellants' brief cites an exhibit attached to appellants' motion to augment the record. Since we denied the motion as to this exhibit, it is improper to rely on this exhibit. (Cal. Rules of Court, rule 15(a).)

cheap, due to restrictions on development. Economists tell us the government is broke, and only development money can fill the bureaucrats' maws. They'll *have* to develop!"

Ojavan Investors sold 19 of the lots to third parties.

To prevent future sales in violation of the lots' deed restrictions, the Commission in April 1992 had the Los Angeles County Recorder's Office record notices of violation actions.

In addition, the Commission in May and July 1992 ordered Bogart, Western Land Bank, Gerald Gregg, and Jerry Gregg and Associates to cease and desist from the sale, conveyance or transfer of any property interest unless there is compliance with the declarations of restrictions.

On July 14, 1992, Ojavan Investors filed a complaint against the Commission challenging its May 1992 cease-and-desist order.

On September 30, 1992, the Commission cross-complained against Ojavan Investors. Also named as cross-defendants were Highland Group, Inc., P.U. Enterprises, Peter Bogart, Jearald Gregg, P. Gannin, Dan Bochner, and Jerry Gregg and Associates.

The Commission's cross-complaint asserted six causes of action. Pursuant to section 30803, subdivision (a), the first cause of action sought injunctive relief, and the second sought declaratory relief. The third cause of action sought civil fines under former section 30820, in the amount of $10,000 for each violation of the coastal development permits. Under former section 30821, the fourth cause of action sought daily civil fines of up to $5,000 for each day in which the alleged violations continue. The fifth cause of action sought section 30822 exemplary damages for Ojavan Investors' alleged knowing and intentional violation of the Coastal Act. The last cause of action requested compensatory and exemplary damages for abuse of process. According to the sixth cause of action, the Ojavan Investors cross-defendants misused their complaint in part by alleging they were corporations when they were sham corporations.

On October 9, 1992, Ojavan Investors petitioned the superior court for writ of mandate seeking the vacating of the Commission's cease-and-desist order. That same month, Ojavan Investors filed a first amended complaint. Later, the superior court dismissed both pleadings, reserving jurisdiction over the Commission's cross-complaint.

On November 2, 1992, Ojavan Investors answered the Commission's cross-complaint. The answer asserted 15 affirmative defenses.

The first affirmative defense was the cross-complaint failed to state facts sufficient to constitute a cause of action, and the ninth affirmative defense was failure to state facts supporting a punitive damages award. The second, third, fourth, sixth, seventh and eighth affirmative defenses respectively claimed waiver, estoppel, contributory negligence, failure to mitigate damages, laches and an unspecified statute of limitations. The fifth defense urged reduction of any damages awarded against Ojavan Investors in proportion to the amount of fault attributable to others. The 10th and 12th through 15th affirmative defenses alleged respectively Ojavan Investors were not parties to the coastal development permits, there was a failure of consideration for the declarations of restrictions, the declarations are unenforceable against Ojavan Investors, the Commission lacks authority to restrict land sales within the coastal zone, and there was no properly noticed public hearing to notify landowners next to the lots affected by the declarations. The 11th affirmative defense alleged no proximate cause attributable to Ojavan Investors for the Commission's purported damages.

By November 3, 1993, the superior court entered judgments stipulated between the Commission and all the third party purchasers whereby the purchasers agreed to an injunction undoing the transfer of the real property to them.

On December 17, 1993, the Commission moved for summary adjudication of the issue of Ojavan Investors' liability under the Coastal Act as pleaded in the cross-complaint's first through fifth causes of actions.

On February 1, 1994, the Commission moved for issue sanctions for discovery violations. This motion stemmed from Ojavan Investors' noncompliance with an order granting the Commission's motion to compel document production.

Pursuant to Code of Civil Procedure section 2023, subdivision (b), Judge Workman granted the discovery sanctions motion on March 3, 1994. The superior court ordered "the facts alleged in paragraph 10 of the cross-complaint are deemed to be established in accordance with the Coastal Commission's claim, to wit: Cross-Defendants are sham corporations, and they are the alter egos . . . for Cross-Defendant Peter B. Bogart. The Coastal Commission, therefore, is relieved from producing any further evidence in support of its alter ego claim, and Cross-Defendants are precluded from presenting any evidence in opposition to the Coastal Commission's alter ego claim."

On March 23, 1994, Judge Workman issued an order granting the Commission summary adjudication of Ojavan Investors' liability under the

Coastal Act as pleaded in the cross-complaint's first through fifth causes of action. The order stated it addressed neither the amount of penalties to be imposed nor any other appropriate relief to be ordered at a later date.

On July 26, 1994, the superior court entered into a stipulated judgment between the Commission and Bochner whereby Bochner agreed to a permanent injunction rescinding the sales to Ojavan Investors.

On August 4, 1994, Judge Workman issued an order granting the Commission's motion *in limine* to prohibit evidence or argument regarding 10 claims of Ojavan Investors. The first four claims are the Commission is guilty of laches, time-barred from enforcing the deed restrictions or the permits, estopped from enforcing the deed restrictions or the permits, and waived its right to enforce the permit and deed restrictions because it acquiesced in the tax sales of some of the restricted lots. The fifth and sixth claims are the deed restrictions and permits are invalid or unenforceable. The seventh claim is the permits or deed restrictions violate the Subdivision Map Act relating to merger, Government Code section 66410 et seq. The eighth and ninth claims are Ojavan Investors had no actual or constructive notice of the deed restrictions, and unknowingly and in good faith transferred deed-restricted property. The last claim is the corporate cross-defendants are not sham and not cross-defendant Bogart's alter egos.

Also on August 4, 1994, Judge Workman issued an order granting the Commission's motion *in limine* to preclude a jury trial on Coastal Act issues.

On August 11, 1994, the cross-complaint was transferred to Judge Ruth Essegian for a court trial solely on remedies. That same day, Bogart and the corporate cross-defendants' counsel orally moved for reconsideration of Judge Workman's grant of the Commission's three motions *in limine*, for Bogart to be represented by separate counsel, and to amend cross-defendants' answer to the Commission's cross-complaint. Judge Essegian denied all three oral motions.[6]

Following the trial, on October 7, 1994, Judge Essegian issued a permanent injunction. Noting the third party purchasers and Bochner stipulated to an injunction undoing all transfers in violation of the deed restrictions, and referring to the prior grant of summary adjudication of the cross-complaint's first cause of action, Judge Essegian permanently enjoined cross-defendants from violating the terms of the Leanse and Thorne permits. Judge Essegian

---

[6]After the trial court denied Ojavan Investors' motion to reconsider the three *in limine* orders, Ojavan Investors petitioned for a writ of mandate to vacate the three orders. We denied the petition.

ordered Bogart within 20 days of October 7, 1994, to rescind the sales of the deed-restricted lots to the third party purchasers, and to refund the purchasers. In addition, she credited $51,000, which Bogart paid to Bochner for the properties, against the Commission's judgment on its cross-complaint.

On October 14, 1994, Judge Essegian issued a tentative statement of decision finding 73 violations. Pursuant to former sections 30820 and 30821, the trial court imposed on Bogart $5,000 for each violation, totaling $365,000, and daily $100 civil fines for each of the 73 violations until compliance with the court's order, totaling $9,457,800 as of the date of the tentative statement of decision.[7] The court denied the Commission's request for exemplary damages under section 30822 on the ground such damages were unnecessary to deter further violations in light of the fines imposed.

Ojavan Investors untimely objected to the tentative statement of decision.

Consistent with her tentative decision, Judge Essegian entered a judgment for the Commission on November 9, 1994.

### DISCUSSION

Ojavan Investors raises 13 narrowly framed issues on appeal. In response, the Commission lists seven issues. We conclude these issues amount to five main issues. One, did the superior court err in finding Ojavan Investors liable under the Coastal Act for buying and selling individual lots in violation of the recorded deed restrictions entered into by Ojavan Investors' predecessors as a condition for the Commission granting the prior landowners' coastal development permits? Two, did Ojavan Investors abandon its challenge of the discovery sanctions? Three, did the trial court err in granting the Commission's motions *in limine* excluding particular evidence? Four, was Ojavan Investors entitled to a jury trial? Five, did the superior court abuse its discretion in imposing a permanent injunction and determining the amounts of the civil fines?

In analyzing these issues, we take note of *Ojavan Investor, Inc.* v. *California Coastal Com. supra*, 26 Cal.App.4th 516 (*Ojavan I*), which upheld dismissals of related actions brought by Ojavan Investors. Since *Ojavan I* is a final decision on the merits and concerned the same permits, deed restrictions and issue of whether the Commission's cease-and-desist order is enforceable against Ojavan Investors, the res judicata doctrine prohibits relitigation of matters already determined in *Ojavan I*. ■ The fact the appeals in *Ojavan I* stemmed from general demurrers did not render the res

---

[7]The parties stipulated to reliance on former sections 30820 and 30821.

judicata doctrine inapplicable.[8] Unlike a judgment following the sustaining of a special demurrer, a judgment following the sustaining of a general demurrer may be on the merits. (*Goddard* v. *Security Title Ins. & Guar. Co.* (1939) 14 Cal.2d 47, 52 [92 P.2d 804].)

■ Contrary to Ojavan Investors' contention, whether the res judicata doctrine applies does not depend on whether the causes of action in the present action are identical to the causes of action in a prior action. Although the causes of action in a first lawsuit may differ from those in a second lawsuit, " '. . . the prior determination of an issue in the first lawsuit becomes conclusive in the subsequent lawsuit between the same parties with respect to that issue and also with respect to every matter which might have been urged to sustain or defeat its determination. . . .' " (*Frommhagen* v. *Bd. of Supervisors* (1987) 197 Cal.App.3d 1292, 1301 [243 Cal.Rptr. 390], quoting *Safeco Insurance Co.* v. *Tholen* (1981) 117 Cal.App.3d 685, 697 [173 Cal.Rptr. 23].)

Given the crux of *Ojavan I* and the present appeal is the enforceability of the deed restrictions as to Ojavan Investors, the *Ojavan I* rulings are binding in the instant action.

One of these rulings was the Leanse and Thorne permits' failure to refer to any restrictions on the lots later purchased by Ojavan Investors "is of no consequence in view of the declarations of restrictions which were duly filed in the county recorder's office. It is well settled that the burdens of permits run with the land once the benefits have been accepted. [Citations.] Accordingly, the declarations of restrictions run with the land and bind appellants even though they were not parties to the deed restrictions." (26 Cal.App.4th at p. 526.)

"Since appellants' predecessors in interest waived their right to challenge the permit's TDC condition because they specifically agreed to and complied with the condition and accepted the benefits afforded by the permits and such predecessors in interest could not transfer or assign to appellants any legal rights greater than they themselves possessed [citations], appellants obtained the property in question with the same limitations and restrictions which bound their predecessors in interest." (*Ojavan I, supra*, 26 Cal.App.4th at p. 527.)

---

[8] A special demurrer attacks a pleading for uncertainty, while a general demurrer points out substantive pleading defects such as failure to state a cause of action or affirmative defenses (e.g., statute of limitations or waiver).

I. *Summary Adjudication of Coastal Act Liability Supported by Recorded Deed Restrictions Entered for Predecessors' Development Permits*

Ojavan Investors contends the superior court erred in granting summary adjudication of the issue of liability under the Coastal Act with respect to the Commission's first through fifth causes of action in its cross-complaint.

 The applicable standard of review of a grant of summary adjudication of issues is the de novo standard. Consequently, we review the superior court's ruling, not its rationale. (*Stratton* v. *First Nat. Life Ins. Co.* (1989) 210 Cal.App.3d 1071, 1083 [258 Cal.Rptr. 721].)

In independently reviewing a motion for summary adjudication of issues, we apply the same three-step analysis used by the superior court. "First, we identify the issues framed by the pleadings . . . . [¶] Secondly, we determine whether the moving party's showing has established facts which negate the opponent's claim and justify a judgment in movant's favor. . . . [¶] When a . . . motion prima facie justifies a judgment, the third and final step is to determine whether the opposition demonstrates the existence of a triable, material factual issue." (*AARTS Productions, Inc.* v. *Crocker National Bank* (1986) 179 Cal.App.3d 1061, 1064-1065 [225 Cal.Rptr. 203].)[9]

The cross-complaint alleged in part Ojavan Investors allowed the violation of the coastal development permit encumbrances, despite the Commission's cease-and-desist order against noncompliance with the declarations of restrictions. The first through fifth causes of action cite sections 30803, subdivision (a), 30820, 30821 and 30822 as the statutory bases for the relief sought.[10] Section 30803, subdivision (a) authorizes an action for declaratory and equitable relief to restrain any violation of the Coastal Act or a Commission order to stop activity inconsistent with a previously issued permit. At the time the cross-complaint was filed, sections 30820 and 30821 provided for civil fines in the amounts pleaded. Section 30822 authorizes exemplary damages for intentional and knowing violations of the Coastal Act.

Although not directed toward our first step of analysis, Ojavan Investors' first argument against the grant of summary adjudication concerns the

[9]Although *AARTS* concerns an appeal of summary judgment, the analysis is the same for an appeal of summary adjudication of an issue.

[10]The cross-complaint quotes sections 30820, 30821 and 30822 as worded when they took effect in 1976. The California Legislature subsequently in 1992 repealed sections 30820 and 30821, and added a new section 30820 imposing higher maximum civil fines than the repealed provisions.

cross-complaint's statutory allegations in support of the third and fourth causes of action.[11] According to Ojavan Investors, the superior court erroneously held Ojavan Investors liable ex post facto because violation of another's previously issued coastal development permit was not a Coastal Act violation when Ojavan Investors bought and resold individual lots subject to the declarations of restrictions. ▮ Ojavan Investors maintains the repealed sections 30820 and 30821 did not authorize fines for a coastal permit violation, thereby requiring reversal.

This argument misreads the unambiguous language of former sections 30820 and 30821. Former section 30820 stated, "Any person who violates any provision of this division shall be subject to a civil fine of not to exceed ten thousand dollars ($10,000)." Although the statute did not specify coastal permit violations, the statute applies to such violations because the Commission may only grant coastal development permits in compliance with the Coastal Act (§§ 30600, subd. (a), 30607), the Coastal Act must be liberally construed to accomplish its purposes (§ 30009), and these purposes include permanently protecting the California coastal zone's natural and scenic resources (§§ 30001, 30001.5). Since the Commission granted the permits at issue here to further the Coastal Act's purposes, former section 30820's broad reach extended to appellants as the successors-in-interest in the real property subject to the permits.

For the same reasons, the absence of language regarding violations of coastal permits does not render former section 30821 inapplicable to Ojavan Investors. That statute provided, "In addition to any other penalties, any person who intentionally and knowingly performs any development in violation of this division shall be subject to a civil fine of not less than fifty dollars ($50) nor more than five thousand dollars ($5,000) per day for each day in which such violation occurs."

While the new section 30820 recombining of many of the provisions of former sections 30820 and 30821 adds liability for activity "inconsistent with any coastal development permit previously issued by the commission," this addition did not change the Coastal Act's continual requirement of a coastal development permit in compliance with the Coastal Act. Nor did the addition alter the Legislature's purposes in enacting the Coastal Act in 1976. Accordingly, appellants do not escape liability as a result of the absence of the term "permit" in the former provisions.

Further, by pleading civil fines in the amounts no higher than authorized by former sections 30820 and 30821, the Commission could not violate the

[11]On appeal, Ojavan Investors raise three arguments for reversal of the summary adjudication order. Since the first two arguments require review of the cross-complaint, we consider those arguments with respect to the first step of *AARTS* test.

constitutional prohibition against an ex post facto law. Such a law "passed after the occurrence of a fact or commission of an act, which retrospectively changes the legal consequences or relations of such fact or deed." (Black's Law Dict. (6th ed. 1990) p. 580, col. 1.)

Like Ojavan Investors' first argument against the summary adjudication grant, the second argument requires analysis of the cross-complaint. ■ The latter argument is Ojavan Investors cannot be liable under the Coastal Act as a matter of law because Ojavan Investors' acts of merely holding title to and reselling the lots do not constitute "performing or undertaking development" for purposes of coastal development permit requirements.

As the Commission pleaded in its cross-complaint, the Coastal Act's definition of the phrase "development," as applied to coastal permit requirements, covers Ojavan Investors' separate transfer transactions. The definition encompasses "subdivision pursuant to the Subdivision Map Act . . . , and any other division of land, including lots splits . . . ." (§ 30106.)

Since Ojavan Investors' purchase and sale of individual lots resulted in splitting of the recombined lots, in violation of the declarations of restrictions required as a condition for the Commission's grant of the Leanse and Thorne permits, Ojavan Investors' activities clearly fell within the definition of section 30106. Therefore, dividing of the recombined lots triggered Coastal Act liability.

Next, pursuant to the three-step *AARTS* test for analyzing the viability of a summary adjudication motion, we consider whether the Commission established facts which negate Ojavan Investors' denial of Coastal Act liability and justify a judgment for the Commission. Pursuant to Code of Civil Procedure section 437c, subdivision (b), the Commission's separate statement of undisputed facts offered factual allegations supported by references to evidence.

The Commission's factual allegations included the recorded declarations of restrictions' provisions recombining seventy-seven former individual lots into two lots, prohibiting the splitting of the two recombined lots, specifying the restrictions constitute covenants running with the land, and subjecting successors to Coastal Act liability for any breach of the declarations of restrictions. The declarations' unambiguous language clearly substantiated these allegations.

Likewise, the grant deeds referred to in the Commission's separate statement evidenced Ojavan Investors' purchase of individual lots and sale of some of those lots to third parties.

Having established facts supporting summary adjudication for Coastal Act liability, the Commission met the second part of the three-part *AARTS* test. As a result, the burden of proof shifted to Ojavan Investors to demonstrate at least one triable issue of material fact. To meet this burden, Ojavan Investors had to cite, in a responding separate statement, to admissible evidence supporting the dispute of each factual allegation made by the Commission. (Code Civ. Proc., § 437c, subds. (b) & (d).)

In opposing the Commission's summary adjudication motion, Ojavan Investors disputes the existence of the underlying Leanse and Thorne permits and the validity and enforceability of the deed restrictions as applied to Ojavan Investors. To support the dispute, Ojavan Investors' opposing separate statement refers to Government Code section 66499.11, paragraphs 2 through 8 of cross-defendant Bogart's declaration, four exhibits and Civil Code section 1468.

Reference to the statutes in the separate statement constitutes improper legal argument. In any event, the definition of the word "development" in section 30106 contemplates the provisions of the Subdivision Map Act (Gov. Code, § 66410 et seq.), including Government Code section 66499.11. Moreover, contrary to Ojavan Investors' separate statement of disputed facts, Government Code section 66499.11 does not state "reversion may *only* occur 'pursuant to provisions of this article.'" (Italics added.) Instead, the statute states, "Subdivided real property *may be* reverted to acreage pursuant to the provisions of this article." (Italics added.) Therefore, Government Code section 66499.11 does not limit how reversion may take place.

■ Even if there were a conflict between the Subdivision Map Act and the Coastal Act, statutory construction principles require a specific statute to prevail over a general statute. (Code Civ. Proc., § 1859; *Loken* v. *Century 21-Award Properties* (1995) 36 Cal.App.4th 263, 272-273 [42 Cal.Rptr.2d 683].) The Legislature enacted the Coastal Act to protect the coast statewide, while it generally gave local government power to regulate local subdivisions throughout the state (Gov. Code, § 66411). However, local regulation of property within the particular area of the coastal zone gives way to the state's authority to preserve the coast's natural resources; otherwise the Coastal Act's purposes would be hindered and the Coastal Act would not specifically refer to the Subdivision Map Act.

Civil Code section 1468 concerns covenants running with the land.[12] In the responding separate statement, Ojavan Investors contended the Commission must prove the declarations of restrictions are enforceable against

---

[12]Civil Code section 1468 provides: "Each covenant, made by an owner of land with the owner of other land or made by a grantor of land with the grantee of land conveyed, or made

Ojavan Investors by establishing the requirements of Civil Code section 1468 were met. Following *Ojavan I*, we reject this contention. "[T]he declarations of restrictions run with the land and bind appellants even though they were not parties to the deed restrictions." (*Ojavan I, supra,* 26 Cal.App.4th at p. 526.)

■ Most importantly, Ojavan Investors' evidence in support of its opposition to the Commission's summary adjudication motion fails to create a triable issue of fact. Bogart's declaration filed in opposition to the motion states the corporate appellants purchased the lots from Bochner following a diligent investigation for liens or restrictions, and in the good faith belief the grant deeds were lawful. Bogart also declared he believed Bochner did not restrict the use of the lots, and the Commission did not object to the purchases from Bochner.

Bogart's self-serving statements, however, do not refute the fact the deed restrictions were recorded in the Los Angeles County Recorder's Office. Because the restrictions were properly recorded prior to appellants' purchase of the lots, appellants (who are admittedly engaged in the land auction business and therefore are sophisticated in land transfer transactions) are deemed to have constructive notice of the deed restrictions. As for the Commission, it did not object to the transfers because it lacked knowledge of them until after they occurred.

---

by the grantee of land conveyed with the grantor thereof, to do or refrain from doing some act on his own land, which doing or refraining is expressed to be for the benefit of the land of the covenantee, runs with both the land owned by or granted to the covenantor and the land owned by or granted to the covenantee and shall, except as provided by Section 1466, or as specifically provided in the instrument creating such covenant, and notwithstanding the provisions of Section 1465, benefit or be binding upon each successive owner, during his ownership, of any portion of such land affected thereby and upon each person having any interest therein derived through any owner thereof where all of the following requirements are met: [¶] (a) The land of the covenantor which is to be affected by such covenants, and the land of covenantee to be benefited, are particularly described in the instrument containing such covenants; [¶] (b) Such successive owners of the land are in such instrument expressed to be bound thereby for the benefit of the land owned by, granted by, or granted to the covenantee; [¶] (c) Each such act relates to the use, repair, maintenance or improvement of, or payment of taxes and assessments on, such land or some part thereof, or if the land owned by or granted to each consists of undivided interests in the same parcel or parcels, the suspension of the right of partition or sale in lieu of partition for a period which is reasonable in relation to the purpose of the covenant; [¶] (d) The instrument containing such covenants is recorded in the office of the recorder of each county in which such land or some part thereof is situated. [¶] Where several persons are subject to the burden of any such covenant, it shall be apportioned among them pursuant to Section 1467, except that where only a portion of such land is so affected thereby, such apportionment shall be only among the several owners of such portion. This section shall apply to the mortgagee, trustee or beneficiary of a mortgage or deed of trust upon such land or any part thereof while but only while he, in such capacity, is in possession thereof."

The remaining evidence of four exhibits relied on by Ojavan Investors show the lots were treated individually for tax purposes. The first exhibit contains copies of certificates of redemption issued by the Los Angeles County Tax Collector, the second exhibit contains a copy of the county's announcement of a public auction sale of the tax delinquent property, the third exhibit contains a copy of the State Controller's authorization for the sale of the tax-defaulted property, and the fourth exhibit contains a copy of a tax deed of the property issued by the county tax collector. These documents are inadmissible as irrelevant (Evid. Code, § 350) because the county's tax treatment of the lots does not affect the Commission's recombination of the lots for Coastal Act purposes. Unlike the function of the Commission to regulate development to protect natural and public resources, the function of local county assessors is merely to raise revenue in the form of taxes. These functions are unrelated.

Last, Ojavan Investors argues the order granting summary adjudication should be reversed because of recently discovered evidence. This evidence, which was not offered in superior court, consisted of the following five items: (1) Bowers' January 16, 1991, letter; (2) a declaration of restrictions executed by Almar Associates, Ltd. June 16, 1981, and recorded by the Los Angeles County Recorder's Office July 3, 1981; (3) a modification of the declaration executed April 1, 1993, and recorded by the county recorder's office January 11, 1994; (4) a declaration of restrictions executed by Morton Devor April 30, 1993, and recorded January 11, 1994; and (5) an excerpt from Bochner's April 20, 1994, deposition, where he testified no one from the Mountains Restoration Trust told him the declarations of restrictions barred the sale of his lots as individual lots and applied to purchasers of the lots.[13]

Citing *North Coast Business Park* v. *Nielsen Construction Co.* (1993) 17 Cal.App.4th 22 [21 Cal.Rptr.2d 104], the Commission maintains Ojavan Investors may not raise the issue of the Bowers' letter on appeal because this issue was not asserted in opposition to the summary adjudication motion. Affirming a summary judgment, the appellate court in *North Coast* refused to consider a factual issue raised for the first time on appeal because of general "waiver" and "theory of the trial" principles and because statutory law requires a separate statement specify all material facts deemed to be disputed. (*Id.* at p. 28.) The court explained the "waiver" and "theory of the trial" principles are "rooted in the fundamental nature of our adversarial system" requiring parties to call the trial court's attention to issues they deem relevant in order to be fair to opponents and the trial court. (*Id.* at pp.

---

[13]On May 10, 1996, appellants moved to augment the record with the five items. We granted the motion only as to the first item.

28-29.) The separate statement requirement in Code of Civil Procedure section 437c serves three functions: giving opponents notice of the facts, allowing the trial court to focus on the facts germane to the issues, and aiding the trial court in discharging its statutory duties. (17 Cal.App.4th at pp. 30, 31.)

Without citing any legal authority, Ojavan Investors argues the new evidence should be considered because the Commission did not turn over the evidence during discovery. Alternatively, Ojavan Investors requests us to treat this portion of the appeal as a writ of error coram nobis, citing a case, *Carroll* v. *Alsop* (Cal.App.) (A011896), deleted upon the California Supreme Court's direction by an August 18, 1983, order. In light of the failure to provide proper legal support, we need not consider this argument. (*In re Marriage of Ananeh-Firempong* (1990) 219 Cal.App.3d 272, 278 [268 Cal.Rptr. 83], citing *County of Sacramento* v. *Lackner* (1979) 97 Cal.App.3d 576, 591 [159 Cal.Rptr. 1]; see also 9 Witkin, Cal. Procedure (3d ed. 1985) Appeal, § 479, p. 469.)

Nor does Ojavan Investors cite to portions of the record supporting its vague discovery evasion argument. Instead, Ojavan Investors cites to portions of the record not concerning discovery, including Judge O'Brien's judgment dismissing Ojavan Investors' petition for writ of mandate following the sustaining of the Commission's demurrer, and exhibits apparently following a prior motion by the Commission for summary adjudication on Ojavan Investors' complaint. Failure to appropriately refer to the record in the opening brief violates California Rules of Court, rule 15(a). We accordingly exercise our discretion to strike the portion of Ojavan Investors' brief concerning the new evidence. (Cal. Rules of Court, rule 18.)

We additionally do not consider Ojavan Investors' new evidence not cited in the separate statement opposing the Commission's summary adjudication motion, in order to further judicial economy and fairness.

II.-IV.*

. . . . . . . . . . . . . . . . . . . . . . . .

V. *Trial Court Does Not Abuse Discretion in Permanently Enjoining Violations of Deed Restrictions and Imposing Civil Fines*

Ojavan Investors challenges both the permanent injunction and the civil fines. We first analyze the permanent injunction and then the civil fines.

---

*See footnote, *ante*, page 373.

### A. The Permanent Injunction Ordering Rescission of All Sales Resulting in Lot Splitting Does Not Amount to an Unconstitutional Forfeiture

■ Where, as here, the trial court's determination of injunctive relief does not result from a pure issue of law or statutory construction, the abuse-of-discretion standard of review applies. (*East Bay Municipal Utility Dist.* v. *Department of Forestry & Fire Protection* (1996) 43 Cal.App.4th 1113, 1125 [51 Cal.Rptr.2d 299].)

■ Ojavan Investors contests the portion of the permanent injunction ordering Bogart to rescind the sales of the deed-restricted lots to the third party purchasers. Appellants claim this order amounts to an unconstitutional forfeiture.

In determining whether the trial court abused its discretion in issuing the mandatory injunction, we examine the cross-complaint. A perusal of the first cause of action for equitable relief shows the Commission contemplated rescission of the transfers in violation of the declarations of restrictions, as the Commission pleaded it was entitled to a permanent injunction "mandating Cross-Defendants to undo the violations of the [coastal development permits] and related encumbrances." The Commission points out appellants neither asserted an affirmative defense of unconstitutional forfeiture in their answer, nor raised this issue in their opposition to the Commission's summary adjudication motion concerning the first cause of action. As a result, the Commission maintains appellants are now precluded from attacking the injunction's rescission of the sales of the subject lots to third parties. We disagree because the summary adjudication motion concerned merely liability and rescission is a remedy.

In support of their forfeiture argument, appellants cite six cases: (1) *Austin* v. *United States* (1993) 509 U.S. 602 [113 S.Ct. 2801, 125 L.Ed.2d 488]; (2) *Boyd* v. *United States* (1886) 116 U.S. 616 [6 S.Ct. 524, 29 L.Ed. 746]; (3) *United States* v. *One 1985 Mercedes* (9th Cir. 1990) 917 F.2d 415; (4) *United States* v. *Jacobsen* (1984) 466 U.S. 109 [104 S.Ct. 1652, 80 L.Ed.2d 85]; (5) *Soldal* v. *Cook County* (1992) 506 U.S. 56 [113 S.Ct. 538, 121 L.Ed.2d 450]; and (6) *Mine Workers* v. *Bagwell* (1994) 512 U.S. 821 [114 S.Ct. 2552, 129 L.Ed.2d 642].

Appellants also quote an excerpt of a prior edition of Black's Law Dictionary as support for their argument the injunctive relief constitutes a forfeiture. However, an updated edition of Black's Law Dictionary indicates forfeiture is a penal concept. The most recent edition defines the term "forfeiture" as "[l]oss of some right or property as a penalty for some illegal act. . . . [¶] Forfeiture of property . . . is one of the penalties provided for

under certain federal and state criminal statutes . . . ." (Black's Law Dict. (6th ed. 1990) p. 650, col. 1.)

The first three cases cited by Ojavan Investors confirm the typical criminal context in which the phrase "forfeiture" is used in the law. *Austin* concerned forfeiture of property used or intended to be used in drug-related crimes. (*Austin* v. *United States, supra*, 509 U.S. at pp. 604-605 [113 S.Ct. at p. 2803].) *Boyd* concerned the forfeiture of goods which the federal government charged were imported into the United States in violation of custom revenue laws. (*Boyd* v. *United States, supra*, 116 U.S. at p. 617 [6 S.Ct. at p. 525].) *One 1985 Mercedes* concerned the forfeiture of a car as a result of underlying charges of drug crimes. (*United States* v. *One 1985 Mercedes, supra*, 917 F.2d at p. 417.)

The fourth and fifth cases cited by Ojavan Investors address issues regarding seizure of property, an action which clearly did not occur in the instant case. *Jacobsen* concerned the removal of cocaine without a warrant by a law enforcement officer summoned by a private freight carrier's employees. (*United States* v. *Jacobsen, supra*, 466 U.S. at p. 111 [104 S.Ct. at p. 1655].) *Soldal* concerned the removal of a trailer from a mobile home park during an unauthorized eviction of the trailer's residents conducted in front of police officers who were present at the request of the park's manager. (*Soldal* v. *Cook County, supra*, 506 U.S. at p. 58 [113 S.Ct. at pp. 541-542].)

Similarly, the sixth case cited by Ojavan Investors is factually distinguishable, as it analyzed the distinction between civil and criminal contempt. (*Mine Workers* v. *Bagwell, supra*, 512 U.S. at pp. 823-824 [114 S.Ct. at p. 2555, 129 L.Ed.2d at p. 649].)

While the permanent injunction required rescission of the lot transfers splitting the recombined lots, thereby resulting in the undoing of appellants' sales, this remedy was not intended to punish or criminalize the parties. Rather, the purpose of the injunction was to protect the public from violations of the Coastal Act. The superior court recognized this purpose in its permanent injunction by referring to the prior order granting summary adjudication. That prior order quoted the deed restrictions as follows: ". . . each restriction 'shall . . . benefit the People of the State of California.' "

Pursuant to section 30803, as amended in 1991, the Commission sought "equitable relief to restrain any violation of this division or of a cease and

desist order . . . ."[19] Section 30009 requires liberal interpretation of the Coastal Act provisions to accomplish its goals, including protection of the coastal zone's resources for the benefit of the environment and the public. (§§ 30001, 30001.5.)

The Commission established the TDC Program to accomplish the Coastal Act's goals. (*Ojavan I, supra,* 26 Cal.App.4th at p. 520.) The program does so by conditioning the issuance of coastal development permits for the Malibu area "on the extinguishment of development rights as to other building sites in the coastal zone, either by offering to dedicate a scenic easement or by filing declarations of restrictions, thereby waiving development rights and unifying separate lots into one parcel." (*Ibid.*)

Had the trial court not rescinded Ojavan Investors' unlawful sales to the third parties, the court would have allowed Ojavan Investors to violate the deed restrictions. Such a result not only would have been contrary to the court's prior determination of Coastal Act liability for violating the deed restrictions' prohibition against splitting the recombined lots, made during the summary adjudication phase of the action, but it would also contravene the Coastal Act's purpose of limiting development in the coastal area.

It is well established the judiciary possesses broad discretion in deciding the type of equitable relief to fit a case's particular circumstances. (*People* ex rel. *Mosk* v. *National Research Co. of Cal.* (1962) 201 Cal.App.2d 765, 775 [20 Cal.Rptr. 516]) This broad discretion includes a court's power to grant a mandatory injunction.[20] (*Allen* v. *Stowell* (1905) 145 Cal. 666, 669 [79 P. 371].)

Since the injunctive relief was intended to protect the public's interest in California's coastal areas, the remedy was civil in nature. Consequently, Ojavan Investors' forfeiture theory does not apply. In view of the record, the trial court properly exercised its discretion in ordering Bogart to rescind the sales to third parties.

### B. *The Fines Are Civil and Constitutional*

Ojavan Investors contest the fines imposed pursuant to former sections 30820 and 30821 as criminal and unconstitutional.

Since the trial court previously found Ojavan Investors liable under the Coastal Act at the summary adjudication phase of the case, the statutes required imposition of fines following the bench trial on the available remedies. Therefore, our analysis focuses on the amounts of the fines.

---

[19]As originally enacted, former section 30803 authorized an action for equitable relief "to restrain any violation of this division."

[20]A mandatory injunction compels action, in contrast to a prohibitory injunction, which prohibits action.

By setting forth a range for the amount of fines to be imposed, both statutes gave the trial court some discretion to determine the amount of fines. As a result, we disagree with appellants' position regarding the applicable standards of review. Rather than apply the substantial evidence and independent judgment standards of review, we apply the abuse-of-discretion standard of review.

According to Judge Essegian's tentative statement of decision, in determining the amount of fines to impose under former section 30820, the trial court considered the following five factors Ojavan Investors stipulated to at trial: "1. The nature, circumstance, extent, and gravity of the violation. 2. Whether the violation is susceptible to restoration or other remedial measures. 3. The sensitivity of the resource affected by the violation. 4. The cost to the state of bringing the action, and 5. With respect to the violator, any voluntary restoration or remedial measures undertaken, any prior history of violations, the degree of culpability, economic profits, if any resulting from or expected to result as a consequence of the violation, and such other matters as justice may require." While the tentative statement of decision is not conclusive, it may be used as an aid to interpret the trial court's final decision embodied in the judgment. (*Birkenfeld* v. *City of Berkeley* (1976) 17 Cal.3d 129, 161 [130 Cal.Rptr. 465, 550 P.2d 1001]; 9 Witkin, Cal. Procedure, *supra*, Appeal, § 264, p. 271.)

The trial court rejected the Commission's position the violations should be rated at the highest level under each factor. Finding "very little or no physical damage to the properties" and "no evidence of any prior violations by defendant [*sic*: cross-defendant]", the trial court determined "[t]hese factors work in mitigating for less than the maximum fine." However, the trial court found the remaining factors "egregious. They include the number of knowing and intentional illegal acts, sensitivity of the resource, cost to the state in bringing this action ($250,000), defendant's [*sic*] culpability and profits made and expected to be made."

The tentative statement of decision shows the trial court exercised its discretion in setting the amounts of the fines, rather than mechanically adopt the Commission's position.[21]

Ojavan Investors argues the fines are excessive as a matter of law. In making this argument, Ojavan Investors first attempts to distinguish *State of California* v. *City and County of San Francisco* (1979) 94 Cal.App.3d 522 [156 Cal.Rptr. 542] from the instant case. The appellate court in that case held a defendant had the burden of proving the defendant should not receive

---

[21]The trial court's refusal to impose exemplary damages, sought by the Commission under former section 30822, also evidences its exercise of discretion.

the maximum amount of civil penalties under California Water Code provisions implementing the Federal Water Pollution Control Act. (*Id.* at pp. 531-532.)

However, the present case does not deal with the imposition of the maximum amount of civil fines. Therefore, *State of California* v. *City and County of San Francisco*, *supra*, 94 Cal.App.3d 522, is inapposite.

Ojavan Investors next challenges the trial court's exclusion of evidence of Bogart's purported lack of knowledge of the deed restrictions prohibiting the splitting of the recombined lots. In excluding such evidence through its grant of the Commission's motion *in limine*, the trial court adhered to its prior adjudication of Coastal Act liability. Notwithstanding the Commission's "constructive knowledge" arguments in support of its summary judgment motion, the judgment indicates the trial court had determined Bogart knowingly and intentionally violated the Coastal Act. The judgment stated in relevant part: "Based on prior orders of the Court . . . , Cross-Defendant Bogart is liable for both injunctive relief and civil fines for each of the seventy-three (73) separate, knowing, intentional and continuous violations of the Coastal Act of 1976 . . . committed by the Corporate Cross-Defendants. . . ." It was thus proper for the trial court to exclude any evidence not pertaining to the remedy stage.[22]

Appellants also maintain the trial court erred in holding them liable under the Coastal Act for 73 violations because only 2 coastal permits were alleged to be violated. However, the superior court in its summary adjudication order previously determined appellants bought 54 lots and then sold 19 lots in violation of the Coastal Act. Since the number of lot transfers totaled 73, the trial court did not err in calculating the number of violations. Moreover, the trial court considered the number of violations as a factor for not imposing the maximum penalty.

Next, Ojavan Investors argues the trial court violated the United States Constitution's Eighth Amendment, which prohibits excessive bail and fines, and cruel and unusual punishments. For legal support, appellants cite *Hale* v. *Morgan* (1978) 22 Cal.3d 388 [149 Cal.Rptr. 375, 584 P.2d 512]. There, the California Supreme Court held Civil Code section 789.3 unconstitutional as violative of due process in particular circumstances. (*Hale* v. *Morgan*, *supra*, 22 Cal.3d at p. 392.) The statute at issue assessed a fixed penalty of $100 per day against a landlord who intentionally interrupts a tenant's utilities for the purpose of evicting the tenant. (*Id.* at p. 399.)

---

[22]Further, a trial is generally limited to issues raised by the pleadings, and appellants' answer to the cross-complaint failed to raise lack of knowledge or a good faith effort to comply with the law

"In the exercise of its police power a Legislature does not violate due process so long as an enactment is procedurally fair and reasonably related.to a proper legislative goal. The wisdom of the legislation is not at issue in analyzing its constitutionality, and neither the availability of less drastic remedial alternatives nor the legislative failure to solve all related ills at once will invalidate a statute. [Citations.] [¶] It is equally well accepted that a state may impose reasonable penalties as a means of securing obedience to statutes validly enacted under the police power." (*Hale* v. *Morgan*, *supra*, 22 Cal.3d at p. 398.)

In view of these principles and the lack of discretion Civil Code section 789.3 gave in fixing the penalty, the Supreme Court concluded Civil Code section 789.3 violated due process as applied to the facts of *Hale*.[23] The Supreme Court opined the fixed penalties for a broad range of culpable landlord activity constituted a "substantial difference" when compared to federal statutes requiring consideration of ameliorating factors for assessment of proper civil penalties. (*Hale* v. *Morgan*, *supra*, 22 Cal.3d at p. 399.)

Like the federal statutes differentiated in *Hale*, the civil fines set forth in former sections 30820 and 30821 were not fixed. Further, pursuant to the parties' stipulation, the trial court considered five factors in determining the amount of civil fines. As a result, *Hale* is distinguishable from the instant action.

"Within the civil penalty context, . . . a provision authorizing the imposition of a minimum civil penalty per violation, with each day constituting a separate violation, could not because of its civil character be subject to challenge under the constitutional provisions prohibiting excessive fines." (*People* v. *Djekich* (1991) 229 Cal.App.3d 1213, 1223, fn. 9 [280 Cal.Rptr. 824].)

Ojavan Investors further contends there is no reasonable proportionality between the amount of the fines and the alleged harm to the government. In making this argument, appellants refer to the portion of the trial court's tentative statement of decision finding "very little or no physical damage to the properties involved."

As Ojavan Investors notes, Nancy Cave, a Commission coastal program analyst who managed the Commission's enforcement program, testified at trial the Commission believed "a deterrent has to be established so that this kind of situation is prevented from occurring in the future."

---

[23]The California Supreme Court affirmed the fact-based analysis of whether Civil Code section 789.3 violates due process by concluding there was no such violation in *Kinney* v. *Vaccari* (1980) 27 Cal.3d 348, 356 [165 Cal.Rptr. 787, 612 P.2d 877].

Ojavan Investors argues Cave's testimony reveals the Commission's punitive goal. We disagree in light of the public-interest goals of the TDC Program, the need for uniform compliance with the program so as to further the Coastal Act's objectives to protect the coast, and appellants' blatant disregard of the deed restrictions.

Although appellants did not develop on the property, by acquiring individual lots for the purpose of selling them to third parties with the enticement of prospective development, appellants engaged in activities contrary to the Coastal Act's goal of limiting development. The auction brochure's very language conflicts with this goal, as well as contradicts Ojavan Investors' denial of intentional violation of the deed restrictions. This brochure explicitly advertised the lots' development restrictions, and mocked the government's laws by trying to lure prospective developers with the statement, "only development money can fill the bureaucrats' maws."

While the fines total over $9.5 million, the amount is large only because Ojavan Investors violated the Coastal Act 73 times and refused to remedy the violations. In view of the record, we conclude the fines were proportional to the number of violations and appellants' flagrant disregard of the TDC Program restrictions.

We hold the trial court did not abuse its discretion in setting the amount of civil fines under former sections 30820 and 30821.[24]

### DISPOSITION

The judgment is affirmed. Appellants to pay respondents' costs.

Lillie, P. J., and Woods, J., concurred.

Appellants' petition for review by the Supreme Court was denied July 9, 1997. Werdegar, J., was of the opinion that the petition should be granted.

---

[24]Since we conclude the fines were not criminal, we need not address the federal cases cited by Ojavan Investors.