Filed 3/28/23 Armstrong Townhomes v. Milgard Manufacturing CA1/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| ARMSTRONG TOWNHOMES, LLC, et al., Plaintiffs and Appellants, v. MILGARD MANUFACTURING, INC., et al., Defendants and Respondents. | A163752 (San Francisco County Super. Ct. No. CGC-18-568770) |

Plaintiffs and appellants Armstrong Townhomes, LLC and James E. Roberts-Obayashi Corporation appeal from a trial court order determining a settlement was in good faith. We shall dismiss the appeal, applying a line of authority, holding that the only review available to appellants is a timely petition for writ of mandate—a line of authority, not incidentally, supported with cases from this Appellate District: *In re Pacific Fertility Cases* (2022) 78 Cal.App.5th 568, 573, review granted August 17, 2022, S275134, and *Housing Group v. Superior Court* (1994) 24 Cal.App.4th 549, 552.

Doing so, we recognize that the issue is currently before our Supreme Court; that if appellants are so inclined, they can seek review of our decision in that court; and that the ultimate holding in that court may differ from that

1

we make here, perhaps resurrecting appellants' appeal. We thus accompany our dismissal with several observations about appellants' briefing and advocacy here—observations that are not complimentary—indicating that if this is the best appellants can do, review should not be sought, as any such appeal may not be worthy of resurrection.

## BACKGROUND

### The Project and the Parties

This appeal has its genesis in a large construction project in San Francisco called Armstrong Townhomes, which involved a complex of 13 buildings and 124 condominium and townhome style units. The developer of the project was Armstrong Townhomes, LLC (Townhomes) and the general contractor/project superintendent was James E. Roberts-Obayashi Corp. (JERO). JERO was also the window installer. Townhomes and JERO are the two appellants here, and when referred to collectively will be called appellants.

There are also two respondents: Milgard Manufacturing, Inc. (Milgard), the manufacturer of vinyl window and door products installed on the project, and P&M Window (P&M), the retailer of the Milgard products. Milgard and P&M are represented by separate counsel, and each has filed a separate brief.

### The Arbitration and the Settlements

In February 2016, the Armstrong Townhomes Association (Association) served on JERO and Bridge Housing Corporation, a California non-profit corporation (Bridge), a notice of commencement of legal proceedings under Civil Code section 910 et seq., which notice alleged the existence of numerous construction defects within the 13 buildings.

On October 5, 2016, the Association commenced an arbitration entitled *Armstrong Townhomes Association v. Armstrong Townhomes, LLC, et al.,* (JAMS ref. no. 11000-85853), asserting claims against Townhomes, JERO, Bridge, and enrollees in an Owner Controlled Insurance Program (OCIP). The Association did not name as defendants any person or entity outside the Project OCIP.

The arbitration alleged seven causes of action, for: (1) negligence, (2) strict liability, (3) breach of implied warranty, (4) negligence per se—violation of Civil Code section 895 et seq., (5) strict liability—product liability, (6) breach of contract—third party beneficiary, and (7) breach of contract. The Association's claims against appellants included mis-installation by JERO of vinyl windows and door products manufactured by Milgard, as well as numerous defects related to building membrane, stucco, cladding, exterior podium decks, elevated walkways, framing, fire system, roofing, plumbing, and subterranean parking garage.

On August 9, 2018, appellants filed a complaint, followed in December by a first amended complaint against Milgard and P&M, alleging six causes of action: (1) implied contractual indemnity; (2) express contractual indemnity; (3) equitable indemnity; (4) breach of express warranty; (5) breach of implied warranty; and (6) declaratory relief.

Meanwhile, as pertinent to the issue here, over the course of the arbitration the Association performed substantial investigation, destructive testing, and window spray testing of the Milgard products installed by JERO. The Association also engaged in significant written discovery and numerous depositions. And among the things its experts concluded was that the Milgard products were installed incorrectly. According to the Association's construction experts, the total cost of repair for all the construction defect

issues in the arbitration totaled between $22,230,788 and $23,951,432 (depending on the adopted scope of repair for elevated walkways). Of this amount, the estimated cost to repair all of the windows installed at the podium buildings was $2,797,141, plus an additional $354,735 for repairs in the duplex buildings, for a total of $3,151,876 for the window claims.

Meanwhile, Milgard retained its own expert, who reviewed all expert deposition transcripts, photographs, and reports, and also attended, observed, and documented the Association's window spray and destructive testing related to the Milgard products.

On April 11, 2019, the parties to the arbitration, along with an attorney for Milgard, attended a formal mediation at JAMS, but the matter did not settle. After that, counsel for Milgard continued settlement discussions with counsel for the Association.

Then, in October 2019, the Association, the two appellants, and Bridge settled the arbitration, in a comprehensive 12-page agreement containing some 40 paragraphs (arbitration settlement agreement). Pursuant to the express terms of the arbitration settlement agreement, the Association settled only those construction claims that it had against OCIP enrollees for construction defect claims related to the project. (See paragraphs 1.0 through 5.0 et seq., of the settlement agreement).[1] As also indicated in the agreement, the settlement monies were consideration for the Association's release of its construction defect claims against the OCIP enrollees.

As noted above, Milgard participated in the mediation held in the course of the arbitration; as also noted, Milgard and the Association

---

[1] The OCIP-enrollees are described in paragraph 2.1 of the arbitration settlement agreement, and the 58 subcontractor OCIP enrollees are listed on Attachment 1 to the arbitration settlement agreement.

continued to discuss settlement thereafter. And in October 2020, those efforts proved successful, resulting in a settlement among the Association, Milgard, and P&M under the terms of which Milgard agreed to pay the Association $59,085 in exchange for the Association releasing all claims against Milgard and P&M (Milgard settlement). The settlement amount was based upon Milgard's fenestration expert's preliminary repair recommendations for 300 casement windows and 342 horizontal sliding windows, and negotiated by counsel for the Association and its experts and counsel for Milgard and its experts. The Milgard settlement was contingent on a finding of good faith pursuant to Code of Civil Procedure[2] section 877.6.

**The Motion for Good Faith Settlement**

On June 16, 2021, Milgard filed a motion seeking a determination that the settlement was in good faith. The moving papers were extensive, and included four declarations that, with their exhibits, were over 400 pages, declarations of: (1) Mark Intrieri, counsel for the Association (139 pages); (2) Sean Paden, counsel for Milgard (224 pages); (3) Pete Cruz, fenestration expert for Milgard (43 pages); and (4) Jose Aldrete, a Milgard employee (18 pages). The declarations and their exhibits demonstrated evidence as to all the factors outlined by our Supreme Court in the seminal case of *Tech-Bilt v. Woodward-Clyde & Associates* (1985) 38 Cal.3d 488 (*Tech-Bilt*), essentially demonstrating the Association's potential total recovery; Milgard and P&M's proportionate liability; the amount to be paid and its allocation to the non-settling defendants; the source of the settlement funds; and the absence of collusion, fraud, or tortious conduct. More specifically, the moving papers established the following:

---

[2] All further undesignated statutory references are to the Code of Civil Procedure.

5

First:  Milgard was not a party to any contract with any party that performed work or supplied materials to the project, and thus did not owe express contractual indemnity or defense obligations to appellants (or any other person or entity) with respect to the arbitration.  And the only written agreements entered into between appellants and P&M were purchase orders from JERO, which did not include any defense or indemnity obligation, and thus P&M likewise did not owe indemnity or defense obligations to appellants (or any other person or entity).

Second:  The Association's total cost to repair all window related issues was $3,151,876.85.

Third:  The Association's investigation and testing revealed the damages attributable to the window leaks were the result of mis-installation of the windows by JERO.[3]

---

[3] In this section of its presentation, citing to no fewer than 20 pieces of specific testimony, Milgard showed among other things:

- That JERO, the window installer, failed to install sealant on the back side of the window fin at the sill "at almost a hundred percent of the locations tested."

- That JERO failed to adhere the window flashing membrane, failed to install sealant on the window fasteners, and failed to install an isolation provision between the windowsill and self-adhered flashing membrane and stucco plaster, trapping water at the sills of the windows, between the plaster and window frame.

- That many of the windows ordered by JERO were designed for installation in stucco surrounds, but were instead installed in/on walls covered with Hardi siding, meaning that excess water was not being drained out of the wall assembly.

- That JERO's installation of wood trim surrounding several of the windows was installed in such a way as to allow water to pass through the waterproofing and into the building structure.

- That JERO failed to properly shim the vinyl windows.

6

Fourth: After lengthy settlement negotiations, including participation in the mediation, the Association and its expert, and Milgard and its expert agreed on repairs to 642 windows at a cost of $59,085, which would be paid by Milgard and not its insurer.

Fifth: That the settlement was not the result of fraud, collusion, or other tortious conduct, was not designed to injure the interest of appellants or other non-settling parties, and the amount paid would be allocated equally between the non-settling defendants.

On June 29, appellants filed their opposition to the motion, consisting of a memorandum of points and authorities, and one declaration, that of Christian Lucia of Sellar, Hazard & Lucia (Sellar Firm), appellants' attorneys. As we understand it,[4] the memorandum made three arguments: (1) relying solely on the arbitration settlement agreement, that the Association lacked "standing" to enter into a settlement with Milgard and P&M because the Association settled the claims against them as part of its settlement of the arbitration; (2) that the settlement did not promote the legislative intent of section 877.6; and (3) that the settlement was the result of fraud and collusion.

As noted, the only claimed factual support for appellants' opposition was the declaration of Mr. Lucia which, exclusive of its one attachment (the arbitration settlement agreement), consisted of nine short paragraphs totaling 25 lines. The first two paragraphs identified Mr. Lucia; five of the next six (Nos. 3, 4, 5, 7, and 8) referred briefly to some procedural history; and the declaration ended with this argumentative paragraph 9: "Pursuant

---

[4] The memorandum itself is not in the record, and the description of it is from Milgard's brief, a description with which appellants' reply brief does not disagree.

7

to the express terms of the settlement agreement [the Association] only intended to keep its rights to make a claim relating to the fire sprinkler incident that allegedly occurred on or around June 10, 2019. (Exhibit A, Section 3.5.)"[5]

Mr. Lucia's declaration did not present any evidence to refute Milgard's evidence that Milgard and P&M's proportionate share of liability was de minimis. Or that Milgard did not have a duty to defend or indemnify any party to the arbitration action, including appellants. Or that the Milgard settlement was not the result of fraud or collusion or entered into with the intent of harming appellants. In short, it showed nothing inconsistent with the showing in the moving papers, this despite that "[t]he party asserting the lack of good faith shall have the burden of proof on that issue." (Code Civ. Proc., § 877.6, subd. (d); *Tech-Bilt, supra*, 38 Cal.3d at p. 493.)

Following Milgard's reply, and appellants' sur-reply, the motion came on for hearing on July 13, before the Honorable Ethan Schulman, a most experienced law and motion judge who, prior to the hearing, had issued a tentative ruling granting the motion. And on July 14, Judge Schulman entered his corrected order determining the settlement was in good faith within the meaning of section 877.6, subdivision (a)(2) and the guidelines

---

[5] Such argument is inappropriate. As the leading practice treatise puts it: "[9:49.5] **Declarations limited to facts, not legal arguments:** It is *improper* to include legal arguments in a declaration. (E.g., 'the interests of justice require . . .' or 'the following matters constitute "good cause" . . . .') As noted by one court, this is 'a sloppy practice which should stop . . . . [I]t makes a mockery of the requirement that declarations be supported by statement made under penalty of perjury.' [Citation.] . . ." (Edmon & Karnow, Cal. Practice Guide: Civil Procedure Before Trial (The Rutter Group 2022) ¶ 9:49.5.)

established by *Tech-Bilt*.  The order was a comprehensive five-pages and provided in its substantive entirety as follows:

"At the hearing, all oral and documentary evidence, including the Motion, the Memorandum of Points and Authorities, the supporting Declarations of Mark G. Intrieri, Esq. Sean P. Paden, Esq., Jose Aldrete, Pete Cruz, and all Exhibits attached thereto, and any and all Opposition and Reply Papers filed, good cause having been found, the Court hereby grants the Motion for Determination of Good Faith Settlement of MILGARD in its entirety.

"The basis for the foregoing Order is set forth in the Tentative Ruling, which the Court has adopted as its final ruling, as set forth below:

"Defendant Milgard Manufacturing, Inc.'s motion for determination of good faith settlement with non-party Claimant Armstrong Place Townhomes Association and co-defendant P&M Window Co., Inc. is granted.

"In October 2019, following an arbitration proceeding initiated by Claimant against Plaintiffs Armstrong and JERO to which Milgard was not a party, Plaintiffs and Claimant entered into a settlement agreement.  By their complaint, Plaintiffs Armstrong Townhomes, LLC and James E. Roberts-Obayashi Corporation (JERO) seek implied and express contractual indemnity, equitable indemnity, and contribution for $12 million their OCIP insurance carriers paid under that agreement on their behalf to settle an underlying construction defect arbitration claim by Claimant.

"In the settlement agreement, in exchange for the $12 million payment, Claimant Association released only 'released parties,' who were defined to include Bridge Housing Corporation, Plaintiffs Armstrong (the project developer) and JERO (the general contractor), and OCIP Enrollees (specified contractors and subcontractors), and did not include Milgard.  (Lucia Decl.,

9

Ex. A, Sec. 5.1.) Plaintiffs' central argument—that Claimant Association has already fully and finally settled and released 'all window claims relating to Milgard and P&M' (Opp. at 3:7) and therefore lacks standing to enter into a settlement agreement with Milgard—therefore is demonstrably false. Plaintiffs' other arguments are equally groundless. For example, that the proposed agreement is conditioned upon a good faith determination, far from establishing collusion or bad faith, is a standard condition routinely entered into by settling parties. (See, e.g., *PacifiCare of California v. Bright Medical Associates, Inc.* (2011) 198 Cal.App.4th 1451, 1458 [defendant agreed to pay plaintiffs settlement amount 'conditioned on the trial court finding [the parties] settled in good faith']; see also *Cahill v. San Diego Gas & Electric Co.* (2011) 194 Cal.App.4th 939, 969 [(*Cahill*)] ['Because the trial court rationally concluded a reasonable person could believe Owners likely would have no potential liability to [plaintiff] (or, thus, SDGE), the court could reasonably infer the settlement was not made with a goal of injuring SDGE'].) The fact that the settlement was reached with the assistance of an experienced mediator is further evidence of lack of collusion.

"Milgard shows that it is not a party to any contract with any party that performed work or supplied materials to the project, and thus does not owe express contractual indemnity or defense obligations to any party with respect to the underlying arbitration or this action. Further, Milgard shows that while it supplied windows and sliding glass doors for the project to JERO, any damages attributed to leaks from those products resulted from misinstallation of the windows and doors, as the Association's own expert testified. ***Plaintiffs do not offer any contrary evidence.*** Accordingly, it is undisputed that Milgard has *de minimis* exposure. The Court therefore concludes that the proposed $59,085 settlement, while modest in amount in

comparison to the underlying settlement amount, is entered into in good faith. (See *Cahill* [, *supra,*] 194 Cal.App.4th at [pp.] 962–968 [trial court properly found that owners' $25,000 settlement with plaintiff was made in good faith, despite plaintiff's claimed damages of $5 million or more, where it concluded that owners 'had little, if any, potential liability for [plaintiff's] injuries']; see also *id.* at [pp.] 967–968 [collecting 'other cases in which relatively insubstantial settlement amounts were upheld as made in good faith'].) Plaintiffs have not met their burden to show lack of good faith. (Code. Civ. Proc., § 877.6[, subd.] (d).) [¶] . . . [¶]

"Based on the foregoing, **it is hereby Ordered as follow[s]:**

"1)      That the settlement between MILGARD, P&M and the Association is hereby determined to be in good faith within the meaning of California *Code of Civil Procedure* § 877.6[, subdivision] (a)(2) and within the guidelines provided by the Supreme Court of California in *Tech-Bilt* . . .[, *supra,*] 38 Cal.3d 488 for purposes of *Code of Civil Procedure* § 877 and § 877.6[, subdivision] (c);

"2)      An order is entered barring all claims against MILGARD and P&M for equitable comparative contribution, or partial or comparative indemnity, based on comparative negligence or comparative fault, including implied contractual indemnity, including, without limitation, Plaintiff, Armstrong Townhomes, LLC and James E. Roberts-Obayashi Corporation ('JERO') (collectively 'PLAINTIFFS') Complaint filed on August 9, 2018, and PLAINTIFFS' First Amended Complaint filed on December 5, 2019 as to the following causes of action: First Cause of Action for Implied Contractual Indemnity[6]; and Third Cause of Action for Equitable Indemnity; and P&M's

---

6 The footnote read: "Implied contractual indemnity refers to claims based on contractual language not specifically dealing with indemnification.

11

Cross-Complaint naming MILGARD as Cross-Defendant, filed and served on or about October 22, 2018, as to P&M's: First Cause of Action for Implied Indemnity; Second Cause of Action for Equitable Indemnity; Third Cause of Action for Apportionment; Fourth Cause of Action for Contribution; Fifth Cause of Action for Negligence (based on equitable indemnity); and Sixth Cause of Action for Declaratory Relief, pursuant to *Code of Civil Procedure* § 877.6[, subdivision] (c); and *California Rules of Court*, [rule] 3.1382.[7]

"3) This determination shall bar any other joint tortfeasor or co-obligor from any further claims against MILGARD and P&M or any co-obligor for equitable comparative contribution, or partial or comparative indemnity, based on comparative negligence or comparative fault. *Code of Civil Procedure* § 877.6[, subdivision] (d). IT IS SO ORDERED."

On July 23, appellants filed a motion for reconsideration, which Milgard opposed.

On August 10, appellants filed a petition for writ of mandate, which we summarily denied on August 18.

On August 18, Judge Schulman entered his order denying appellants' motion for reconsideration. And on September 14, appellants filed their

---

These are treated as claims for equitable indemnity and thus will be barred by a 'good faith' settlement under Code of Civil Procedure § 877.6[, subdivision] (c). *Prince v. Pacific Gas & Electric* (2009) 45 Cal.4th 1151, 1165; see also *Bay Development Ltd. v. Superior Court* (*Home Capital Corp.*) (1990) 50 Cal.3d 1012, 1032."

[7] The state of the pleadings as of the time of Judge Schulman's order was that on April 27, 2020, appellants had dismissed the sixth cause of action, for declaratory relief. And on May 28, 2021, appellants agreed to dismiss their fourth cause of action for breach of express warranty and fifth cause of action for breach of implied warranty. Thus, the only pending claims against Milgard were two causes of action in appellants' first amended complaint: the first, for implied contractual indemnity, and the third, for equitable indemnity.

notice of appeal, followed on September 30 by an amended notice of appeal, clarifying they were appealing from the order dated July 14 and served July 15.

## DISCUSSION

### Introduction and Some Observations About Appellants' Briefing

Represented by the Sellar firm, the same firm that represented them below, on May 16, 2022, appellants filed a 15-page opening brief. Following a two-page table of authorities, the brief has this three-line "Statement of Appealability": "This appeal is from the judgment of the San Francisco County Superior Court, and is authorized by the Code of Civil Procedure, Section 904.1, subdivision (a)(2)." As discussed below, such matter-of-fact statement ignored the well-recognized split of authority on the question whether a determination a settlement was in good faith is reviewable by appeal, which authority included a decision from this District holding that it is not: *Housing Group v. Superior Court*, *supra*, 24 Cal.App.4th at p. 552 (*Housing Group*). Such failure is hardly effective appellate advocacy, not to mention a probable breach of counsel's duty of candor to the court.[8]

Appellants' statement of appealability is followed by a 13-line "Statement of the Case" and a 32-line "Statement of Facts" which, despite the voluminous record described above, has a total of four citations to the record. And then follows appellants' claimed "Standard of Review," which is wrong.

---

[8] Rule 3.3, Rules of Professional Conduct, provides in pertinent part as follows: "A lawyer shall not [¶] . . . [¶] (2) fail to disclose to the tribunal legal authority in the controlling jurisdiction known to the lawyer to be directly adverse to the position of the client and not disclosed by opposing counsel, or knowingly misquote to a tribunal the language of a book, statute, decision or other authority. . . ."

13

California Rules of Court, rule 8.204(a)(2)(C) provides that an appellant's opening brief shall "[p]rovide a summary of the significant facts . . . ." And the leading California appellate practice guide instructs about this: "Before addressing the legal issues, your brief should accurately and fairly state the critical facts (including the evidence), free of bias; and likewise as to the applicable law. [¶] Misstatements, misrepresentations, and/or material omissions of the relevant facts or law can instantly "undo" an otherwise effective brief, waiving issues and arguments; it will certainly cast doubt on your credibility, may draw sanctions [citation], and may well cause you to lose the case." (Eisenberg et al., Cal. Practice Guide: Civil Appeals and Writs (The Rutter Group 2020) ¶ 9:27, p. 9-8), italics omitted.

The 45 lines in the two "statements" in appellants' brief hardly measures up.

But beyond this general criticism, appellants' brief warrants several specific criticisms, beginning with its treatment of the standard of review. Citing to *City of Grand Terrace v. Superior Court* (1987) 192 Cal.App.3d 1251 (*Grand Terrace*), appellants' brief asserts that "the appellate court on review looks to the record to see if the trial court erred in reaching its findings. If the trial court's ruling is clearly erroneous, its decision will be reversed. [Citation.]" This is false.

The standard of review is abuse of discretion. As *Tech-Bilt* itself put it, the "determination as to whether a settlement is in good faith must be left to the discretion of the trial court." (*Tech-Bilt, supra*, 38 Cal.3d at p. 502; *Dole Food Co., Inc. v. Superior Court* (2015) 242 Cal.App.4th 894, 909; *PacifiCare of California v. Bright Medical Associates, Inc*, *supra*, 198 Cal.App.4th at p. 1464 [good faith settlement determination " 'may be reversed only upon a showing of abuse of discretion' "].)

14

Milgard's respondent's brief pointed out appellants' misrepresentation.[9] Appellants' reply brief simply ignores it.[10]

Rule 8.204(a)(1)(C) of the California Rules of Court requires that any reference to a matter in the record, whether factual or procedural, be supported by a citation to the volume and page number where the matter appears. (*Professional Collection Consultants v. Lauron* (2017) 8 Cal.App.5th 958, 970; *Myers v. Trendwest Resorts, Inc.* (2009) 178 Cal.App.4th 735, 745.)

Milgard's brief criticizes appellants' brief in this regard, beginning by noting that despite the extensive showing made by Milgard below, appellants have only four citations to the record: two to the arbitration settlement agreement, one to the Milgard settlement agreement, and one to Judge Schulman's order. Milgard's criticism then proceeds for several more pages, listing with specificity 19 claimed "facts" set forth in appellants' brief that have no record reference. Appellants' reply brief does not even acknowledge the criticism, let alone respond to it.

An opening brief that fails to make the appropriate references to the record is subject to sanctions, to the point that a Court of Appeal may strike portions of the brief. (*C.J.A. Corp. v. Trans-Action Financial Corp.* (2001) 86 Cal.App.4th 664, 673; *Ojavan Investors, Inc. v. California Coastal Commission* (1997) 54 Cal.App.4th 373, 391.) We need not decide any such sanction here, as the appeal will be dismissed.

---

[9] Doing so, Milgard actually provides this quote from *Grand Terrace*: "As set forth earlier in this opinion, neither the policy nor the family exclusion provision were a part of the record and as a result thereof, there was an insufficient showing that the exclusion was or was not applicable. **For this reason, it was an abuse of discretion for the trial court to find a good faith settlement**."

[10] Appellants' reply briefs were written by a different lawyer at the Sellar firm than the lawyer who wrote the opening brief.

**The Appeal Will Be Dismissed**

In response to appellants' statement of appealability, both Milgard's and P&M's respondent's briefs asserted that appeal is not available here, citing to section 877.6, subdivision (e). which provides that a party aggrieved by a good faith settlement determination "may petition the proper court to review the determination by writ of mandate." In light of this, there is an issue whether mandate is the sole remedy available or whether an aggrieved party can also appeal, and the answers by the Courts of Appeal have not been uniform, resulting in a split of authority that has been in existence for over 20 years. (See *Housing Group*, *supra*, 24 Cal.App.4th at p. 552 [ review by writ only; no appeal available]; *Maryland Casualty Co. v. Andreini* (2000) 81 Cal.App.4th 1413, 1423 [appeal available].)

This split of authority was discussed at length by our colleagues in Division One in *In re Pacific Fertility Cases* (2022) 78 Cal.App.5th 568 (*Pacific Fertility*) where, in a comprehensive opinion, the court held that the answer was "No," appeal is not available, relying in part on the decision in *Housing Group*.[11] Both of respondents' briefs specifically cited to *Pacific Fertility*. Neither of appellants' reply briefs so much as mentions the case.

What appellants' briefs say begins with the assertion that section 877.6 "does *not* expressly provide that a writ is the exclusive means of obtaining appellate review," citing to *Cahill*, *supra*, 194 Cal.App.4th 939, 969—one of the cases in the line of authority rejected by *Pacific Fertility*. And the reply briefs continue:

---

[11] In granting review in *Pacific Fertility*, the Supreme Court's order provided as follows: "the opinion of the Court of Appeal, which is currently published at 78 Cal.App.5th 568, may be cited, not only for its persuasive value, but also for the limited purpose of establishing the existence of a conflict in authority" in the state's Courts of Appeal.

"Assuming, *arguendo*, that Section 877.6 (e) does import a mandatory obligation to first petition the court via writ petition, Appellants have already done so, and its petition was summarily denied. Upon such a denial, the courts have held that a good faith settlement determination could be challenged on appeal despite the filing of an earlier writ petition, which petition was summarily denied. The summary denial without opinion of a petition for a writ is not res judicata. *Greshko v. County of Los Angeles* (1987) 194 Cal.App.3d 822. The court in *Greshko* and *Maryland Casualty Co. v. Andreini*[, *supra*,] 81 Cal.App.4th 1413 . . . held that a good faith settlement determination could be challenged on appeal, despite the filing of an earlier writ petition that was summarily denied. Here, Appellants did file a writ petition following the trial court's initial finding of a good faith settlement, which was subsequently denied. . . .

"**The Good Faith Settlement may be reviewed by this court.**

"The court has the right to review variety [*sic*] of trial court rulings, orders and decisions. Pursuant to . . . section 906, 'the reviewing court may review the verdict and decision and *any intermediate ruling*, proceeding, order or decision which involves the merits or necessarily affects the judgment or order appealed from, or which substantially affects the rights of a party . . . and may affirm, reverse or modify any judgment or order appealed from and may direct the proper judgment or order to be entered. . . .' ([E]mphasis added).

"The Good Faith Settlement represents an intermediate ruling involving the merits of this case. The Good Faith Settlement significantly affects the rights of Appellants to pursue all remedies against those parties who share significant liability due to the use of their defective products.

Under . . . section 906, the Court has discretion to review this intermediate ruling and reverse the original unjust and erroneous finding."

This is manifestly nonresponsive to the issue—an issue we decide against them, following the thoughtful, well-reasoned decision in *Pacific Fertility*. We thus dismiss the appeal.[12]

---

[12] Another possible issue of appealability here was brought to our attention by P&M's respondent's brief, which argued that the appeal is not properly before us because there has not been a final judgment. The essence of the argument is that the pleadings affected by the motion for good faith settlement were only to the first and third causes of action and the cross-complaint; that the other causes of action were not implicated by the motion; and that P&M filed a motion for summary adjudication on those causes of action, which was denied. And to demonstrate that issues remained, P&M noted that "on September 19, 2022, Appellants filed a Case Management Statement estimating a 3 [to] 5 day jury trial on causes of action for express and implied warranty. [Citation.]" In short, P&M argued, issues remain as between Appellants and P&M, there is no final judgment, and this Court lacks jurisdiction.

Appellants' reply brief did not come to grips with P&M's argument. So our clerk's office sent counsel a letter requesting briefing on the question why this appeal should "not be dismissed as violative of the 'one final judgment rule,' " citing to *Griset v. Fair Political Practices Commission* (2001) 25 Cal.4th 688, 697. On March 9, we received an untimely two-page letter brief (written by a third different lawyer at the Sellar firm), which we nevertheless accepted for filing. That brief focuses on Milgard, and argues that the appeal is proper as to it. But Milgard was not the respondent that raised the issue, P&M was. And as to it, appellants apparently concede the argument, in their words, admitting that "Appellants' claims against the remaining parties are still pending . . . ."

All that being said, we adopt the approach of our colleagues in *Pacific Fertility* which, faced with a similar issue, concluded that in light of its holding, it need not decide the issue. (See *Pacific Fertility*, *supra*, 78 Cal.App.5th at p. 575, fn. 4.)

**Some Concluding Remarks**

As noted above, the issue whether an appeal is available is currently before our Supreme Court. We surmise that if appellants petition for review, they would likely obtain a "grant and hold," to await the Supreme Court's ultimate decision on the issue. And if that decision were different than the one we reach here, its effect would be to breathe life into appellants' appeal, thus giving rise to these concluding comments.

We described above the numerous shortcomings in appellants' briefing and advocacy, shortcomings that were pointed out by respondents and ignored by appellants. But in addition to its many procedural violations, appellants' briefing suffers from substantive problems as well, beginning with the fact that the three arguments it does make[13] are essentially identical to the arguments appellants made below, arguments rejected by Judge Schulman. Indeed, appellants' primary argument here, to which it devotes over half its substance, was rejected by Judge Schulman as "demonstrably false." Good appellate advocacy does not just regurgitate losing arguments made below. (See generally, Eisenberg, Cal. Practice Guide: Civil Appeals and Writs, *supra*, ¶ 9:30, pp. 9-10 to 9-11; *Sebago, Inc. v. City of Alameda* (1989) 211 Cal.App.3d 1372, 1387–1388.)

But beyond all that, appellants' briefing utterly ignores Judge Schulman's comprehensive order, making no attempt to demonstrate that it

---

[13] The three arguments are: (1) "The Association had already released its claims against Milgard."

(2) "Milgard's settlement with the Association does not meet the legal standard of a good faith settlement."

(3) "Milgard's settlement contravenes the purposes of good faith settlements."

19

was an abuse of discretion, that it was a decision that "exceeds the bounds of reason" (*People v. Beames* (2007) 40 Cal.4th 907, 920), or is arbitrary, capricious, patently absurd, or whimsical. (See, e.g., *People v. Bryant, Smith and Wheeler* (2014) 60 Cal.4th 335, 390). In its observation on the subject in one leading case, our Supreme Court said that "A ruling that constitutes an abuse of discretion has been described as one that is 'so irrational or arbitrary that no reasonable person could agree with it.' " (*Sargon Enterprises, Inc. v. University of Southern California* (2012) 55 Cal.4th 747, 773.) Or as that court put it in its most recent definition, "arbitrary or irrational." (*In re White* (2020) 9 Cal.5th 455, 470.)

These adjectives hardly apply to Judge Schulman's order here. And appellants have not even attempted to show they do.

## DISPOSITION

The appeal is dismissed. Milgard and P& M shall recover their costs on appeal.

_____
Richman, J.

We concur:

_____
Stewart, P.J.

_____
Miller, J.

*Armstrong Townhomes, LLC v. Milgard Manufacturing, Inc.*
(A163752)